HARRIS, et al. *v.* McCUISTON.

May 18, 1953

No. 38745        32 Adv. S. 6        64 So. 2d 692

*H. T. Holmes* and *Robertson & Horton,* for appellants.

*J. W. Conger,* for appellee.

KYLE, J.

Dean McCuiston, the plaintiff, recovered a judgment in the circuit court of Montgomery County against J. C. Harris and Dan Dunn, the defendants, for the sum of $334.78 in an action for damages to the plaintiff's auto-

mobile and for personal injuries alleged to have been sustained by the plaintiff as a result of the plaintiff's automobile colliding with a 1½ ton Chevrolet truck owned by the defendant, J. C. Harris, and operated by Dan Dunn, his employee; and from that judgment the defendants prosecute this appeal.

The accident occured on a public road about three miles south of Winona on January 7, 1952. The plaintiff was driving his 1941 Chevrolet automobile northwardly toward Winona, and as he was passing the north entrance to the private driveway leading from the public road to J. C. Harris' dwelling house his automobile collided with the Chevrolet truck, as the truck driver was making a left turn to enter the driveway. The collision occurred a few feet north of 'J. C. Harris' mailbox, which was located on the crest of a hill. From the photographs introduced in evidence and the testimony of the witnesses, it appears that there was a curve in the road in front of the Harris dwelling house, and the road ran down hill in both directions from the mailbox.

McQuiston testified that he was driving northwardly toward Winona at a rate of speed of about 30 or 35 miles per hour, and that he had passed the south entrance to the driveway in front of the Harris dwelling house and was approaching the north entrance to the driveway when he saw the truck coming toward him; that he pulled to the right immediately, and the truck kept coming across the road toward him; that he applied his brakes and whirled his car back to the right and up into the edge of the driveway in an effort to avoid a collision; but that the truck continued across the road into the edge of the driveway; and that the collision occurred in the entrance to the driveway. McCuiston's automobile was badly damaged, and McCuiston sustained minor personal injuries as a result of the collision. McCuiston testified that Dan Dunn, the driver of the truck, gave no signal to indicate that he intended to make a left turn at the entrance to the driveway, either by extending his hand and arm hor-

izontally, as required by the statute, or otherwise, to indicate that he proposed to execute a left turn; and that he made no effort to stop his truck when he saw the plaintiff approaching in his automobile, until he saw that the two vehicles were about to collide. He stated that he was only a few feet in front of the truck when the driver of the truck started across the road in front of him.

B. H. Dyess testified that he was driving northwardly toward Winona and was about a quarter of a mile behind McCuiston at the time McCuiston's car came to a sudden stop on the crest of the hill near J. C. Harris'. mailbox, and that he reached the scene of the accident almost immediately. Dyess stated that the left side of McCuiston's automobile and the right side of the truck were the parts that withstood the impact. On cross-examination Dyess stated that McCuiston had passed him only a few minutes before the accident occurred, and he estimated that Mc-Cuiston was going about 30 miles per hour as he passed.

J. C. Harris was called as an adverse witness for the plaintiff and testified that he was the owner of the truck and that Dan Dunn was his employee and was driving the truck for him at the time of the accident. Harris stated that he arrived at the scene of the accident soon after it occurred. He saw skid marks in the graveled roadway which showed that McCuiston's automobile skidded approximately 69 feet before striking the truck, and Harris stated that the truck appeared to have been knocked over about three feet when the automobile struck it. Harris testified that the road in front of his residence was a graveled road 30 feet wide, and that the Chevrolet truck was 26 feet in length. He stated that the two entrances into the driveway were approximately 75 feet apart.

Dan Dunn, the colored truck driver, testified that he crossed a bridge at the foot of the hill below the north driveway entrance; that the road was rough and that he cut down his speed; that as he approached the entrance to the driveway he opened his left door and looked back to

see if there was anything behind him; that he saw nothing behind him, and that he proceeded up the hill; that he changed gear as he turned to enter the driveway; and that he got across the road, all but the right rear wheel of the truck, and at that time saw a car approaching from the south at a distance of about 500 feet. He said that he had already turned toward the left when he saw the car and that he drove about 18 or 20 feet across the road before the car hit his truck. On cross-examination Dan Dunn stated that he did not hold out his hand or extend his arm and hand toward the left when he undertook to execute the left turn; and he stated that the plaintiff could not have seen him if he had held out his hand. He admitted that he knew that it was his duty to look in both directions and to hold out his hand before undertaking to execute a left turn.

Dewitt Tyler, the outgoing sheriff, and J. W. Herring, the incoming sheriff, testified that they went to the scene of the accident soon after the accident occurred. Both testified to the layout of the road and the location of the driveways and the skid marks which they observed along the graveled road. Herring also stated that the entrance to the driveway was below the crest of the hill, and that Dan Dunn did not drive his truck to the crest of the hill before he made the left turn into the driveway.

The appellants' attorneys argue only two points on this appeal: (1) That the court erred in granting the plaintiff's instruction No. 2, and (2) that the verdict of the jury is against the overwhelming weight of the evidence.

The plaintiff's instruction No. 2 reads as follows:

"The court instructs the jury that the driver of a vehicle on a public highway intending to turn to the left must exercise care that he is not turning into the path of some vehicle coming toward him, and he must take a proper position, and must signal in the manner required by law by holding his left hand arm out horizontally, and unless he has sufficient time to pass to the left, he must wait for

a clear opportunity and proceed safely and other drivers have the right to assume that he will do so.''

The appellants' attorneys say that the above mentioned instruction is erroneous for the reasons, first, that the instruction is not applicable to the facts in the case, and second, that the latter part of the instruction is not the law of this State and is in direct conflict with the decisions of our own court.

The appellants' contention that the instruction is not applicable to the facts in the case is untenable. ▮▮ The instruction represented the plaintiff's theory of the law, as applied to the facts testified to by him and his witnesses. It is true that Dan Dunn testified that he had already crossed over the road into the edge of the driveway before the plaintiff saw him; but Dan Dunn's testimony on that point was in direct conflict with the testimony of the plaintiff; and the jury rejected that part of Dan Dunn's testimony. The instruction was based principally upon the plaintiff's own testimony. The plaintiff testified that when he started around the curve in front of J. C. Harris' dwelling house he saw the truck coming toward him. The skid marks indicated that the plaintiff's car was then at least 70 or 80 feet in front of the truck. If Dan Dunn had given the arm and hand signal which the law required, the plaintiff might have been able to swing his car to the left and pass the truck without injury to himself or the truck driver. But no such signal was given, and the plaintiff, when he saw the truck immediately in front of him, had no way of knowing whether the truck driver would continue across the road into the J. C. Harris driveway or pull back into his own lane of travel and permit the plaintiff to pass on his own side of the road.

The appellants say, however, that the latter part of the instruction is in direct conflict with the rule announced by this Court in the cases of Terry, et al. v. Smylie, 161 Miss. 31, 133 So. 662; Rhodes v. Fullilove, 161 Miss. 41,

134 So. 841; and McMinn v. Lilly, 4 Adv. S. 9, 60 So. 2d 603, wherein the Court held that the driver of a motor vehicle may not always assume that other drivers of motor vehicles on the public highway will obey the laws of the road. But each of those cases is clearly distinguishable from the case that we have here; and only one of those cases has any direct bearing upon the question that we are now considering.

In the case of McMinn v. Lilly, supra, the plaintiff was a 9-year-old boy who was injured while riding a bicycle on the highway, when the defendants' truck collided with the plaintiff's bicycle. The accident occurred while the truck driver was descending a long hill. The plaintiff was proceeding in the same direction on his bicycle. When the plaintiff was first seen by the truck driver, he was approximately 100 yards in front of the truck. The truck passed one or two other vehicles before overtaking the bicycle which was proceeding along the right side of the road. Just as the truck driver was about to overtake and pass the plaintiff, the plaintiff turned his bicycle to the left and into the path of the oncoming truck and the two vehicles collided. The plaintiff was seriously injured. The defendants contended that the truck driver had the right to assume that the plaintiff, who was riding his bicycle on the right side of the road, would not turn his bicycle suddenly into the path of the truck which was overtaking him from the rear. But the Court in its opinion said: ''The defendants are in error under previous decisions of this Court in contending that the driver of a motor vehicle may assume that others on the highway will obey the laws of the road.'' The Court in its opinion, however, qualified that statement by adding: ''But, of course, a motorist is not required to anticpiate the action of another person on or along the highway, whether a child or an adult, unless he knows, or by the exercise of reasonable care should know of the presence of such person.''

In none of the above mentioned cases did the Court deal with the question as to the right of a motorist to assume that the driver of a vehicle proceeding in the opposite direction will not turn into the lane of travel of an approaching vehicle without giving a proper signal of his intention to turn, or the question as to the right of a motorist to assume that the driver of a vehicle approaching on the wrong side of the road will turn to his own right side in time to avoid danger. Those questions were considered, however, in the case of Rawlings v. Inglebritzen, 211 Miss. 760, 52 So. 2d 630; and the Court in its opinion in that case quoted with approval the following statement from 60 C. J. S., p. 735, Motor Vehicles, par. 317:

"A motorist's right to assume that the driver of a vehicle proceeding in the opposite direction will obey the law of the road exists only until he knows, or in the exercise of ordinary care, should know otherwise. Accordingly, he may rely on the assumption that the driver of a vehicle approaching on the wrong side of the road will turn to his own right side in time to avoid danger, and that a vehicle approaching on its own right side of the road will remain on that side, until, and only until, he sees or, in the exercise of due care, should see that the driver of the approaching vehicle will not do so, as where it becomes apparent that the driver of the approaching vehicle is unable seasonably to turn into the right side of the road and avoid danger."

There was an irreconcilable conflict between the testimony of the plaintiff and the testimony of Dan Dunn. If Dan Dunn made the left turn into the driveway while he was below the crest of the hill and in a place where his truck could not be seen by the driver of a motor vehicle approaching from the opposite direction, as testified to by him, he was guilty of negligence whether he gave the statutory signal or not. If Dan Dunn made the left turn after reaching the crest of the hill, as testified to by the plaintiff, he was guilty of negligence in turning his truck

into the path of the plaintiff's oncoming car and in failing to give the statutory signal. The plaintiff was not required to anticipate the action of Dan Dunn in making the left turn into the driveway without giving the arm and hand signal required by the statute; and if the plaintiff's testimony is to be accepted as true, ██ ██ when the plaintiff saw Dan Dunn's truck approaching him on the wrong side of the road as it came over the crest of the hill, the plaintiff had a right to assume that Dan Dunn would turn back into his own lane of travel in time to avoid a collision; and the plaintiff had a right to rely on that assumption until he saw, or by the exercise of reasonable care could have seen, that Dan Dunn would not turn back into his own lane of travel. Rawlings v. Inglebritzen, supra.

██ ██ If there was error in the instruction complained of, under the facts in this case such error was harmless and would not justify a reversal of the judgment of the lower court. Neely, et al. v. City of Charleston, 204 Miss. 360, 37 So. 2d 495.

██ ██ The defendants' theory of the case was that the collision was caused by the plaintiff's negligence in failing to keep a proper lookout and in failing to keep his automobile under proper control as he started around the curve in front of J. C. Harris' dwelling house; and that theory was properly presented to the jury in the defendants' instructions. The question whether Dan Dunn's negligence or the plaintiff's negligence, if any, was the proximate cause of the collision was a question for the jury to decide. The jury decided the issue in favor of the plaintiff, but failed to return a verdict for the full amount sued for. The jury may have believed that the plaintiff was guilty of contributory negligence and may have reduced his damages on that account. But the plaintiff's contributory negligence did not constitute a bar to his right to recover damages, if the jury believed from the evidence that Dan Dunn's negligence was a proximate contributing cause of the collision.

There was ample evidence to support the verdict of the jury in favor of the plaintiff, and the judgment of the lower court is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Lee, Ethridge* and *Lotterhos, JJ.,* concur.