HAMILTON, et al. *v.* McCRY

No. 40329        December 17, 1956        91 So. 2d 564

*Hall & Callender, Maurice Dantin,* Columbia, *H. H. Parker,* Poplarville, for appellants.

*R. E. Steen,* Picayune; *Wingo* and *Finch,* Hattiesburg, for appellee.

LEE, J.

This was a suit by Ella McCry against Mrs. L. M. Hamilton and husband to recover damages for personal injuries sustained by her as a result of a collision between the truck in which she was riding and a Cadillac automobile, driven by Mrs. Hamilton. There was a verdict for the plaintiff in the sum of $5,000, and the defendants appealed.

Between 6:30 and 7:00 o'clock on the morning of February 16, 1953, Matt Ceasar, driving a pickup truck, with his wife, Eula, and the plaintiff, Ella McCry, his mother-in-law, therein, were travelling south on U. S. Highway No. 11. These parties worked for Mrs. Edward Dunn, who lived on the east side of the highway. A driveway led from the highway to her home. As Ceasar was undertaking to turn from the right lane into this driveway, his truck collided with a Cadillac automobile, travelling north and driven by Mrs. L. M. Hamilton.

Ella McCry, about 72 years of age at the time, suffered a compound fracture of both the tibia and the fibula bones of her left leg, and was seriously and permanently injured.

Under the pleadings and the evidence, the question for solution was whose negligence proximately caused Ella McCry's injury? Matt Ceasar's or Mrs. Hamilton's? The plaintiff did not testify. She was shown to be in bed and unable to attend court on the day of the trial.

Ceasar and his wife both testified for the plaintiff. Matt said that the weather was good and his truck and brakes were in good condition. He drove down the incline and approached the intersection of the driveway at a speed of about 25 miles an hour. He slowed down and put out his hand as a signal of his purpose to turn. There was no vehicle behind him. He looked south and saw no vehicle. He stopped, put his truck in low, and started to turn into the driveway. His wife said, "There comes a car." He immediately slammed on the brakes and stopped with his left wheel on the center line. The left front of his truck was hit by the left front of the Cadillac when he was standing still, and his truck would have been knocked off the highway, if he had not had the brakes on. As to the speed of the car, he said, "It was running. My wife hollered 'there comes a car' and I slammed on my brakes and it was just like that * * * It was sure going." The car ran off of the highway about 110 feet north; and when he went to see about Mrs. Hamilton, she told him that she was in a hurry, and asked him to get the bread from the back seat.

Eula Ceasar testified that, as they got almost to the turn, Matt had his hand out and she looked both forward and backward and saw no vehicle either in front or behind; but that when she looked forward again, she saw the car and called out, "Yonder is a car", and her husband said, "I see it", and put on his brakes. The truck stopped very close to the center line and was standing still when it was hit. With the brakes on, the impact turned the truck around. The Cadillac was going so fast that she could not tell its color, and she could not estimate its speed in the short time that it came into view. There is a dip in the highway to the south, and the cars coming so fast was the reason why they did not see it.

Mrs. Edward Dunn, whose home is about 500 feet off of the highway, was inside the house when she heard the noise of the collision. She went immediately to the scene

and said that the truck was practically on the center line of the highway, shifted a bit toward the entrance. Matt wanted to carry some bread to the tourist camp, but she told him to look after his folks. Her driveway is elevated above the road; and one going south therefrom cannot see a vehicle in the dip. She, Eula Ceasar, and Dr. S. S. Ketty testified as to the extent of the plaintiff's injuries.

Several witnesses testified for the defendants that, following the collision, the truck was over the center line, ranging from more than one-half of the length to as little as one and one-half feet.

Mrs. Hamilton testified that she had gone to the Ozona Grocery for bread and was returning. She saw the truck descending the hill near the Pine Tree Drive-Inn Theater about four-fifths of a mile away, and said that, if Matt Ceasar had been looking, he would have seen her car. She said that her car was struck at a time when it was about two feet off of the pavement. Her counsel asked her to tell, as she approached the intersection before entering it, what Ceasar's actions and movements were, and she replied: "As he was coming down the hill he began slowing down. I realized he was going to make the turn and I thought surely he would stop until I had passed. When he didn't stop I was too close on him, around 15 or 20 feet, and I couldn't stop when I realized that he was coming right on into the left of my car." She admitted that there is a dip south of the driveway, and said that she was not necessarily in a hurry. On cross-examination, she admitted that she travelled the highway daily, was familiar with the driveway, and knew that it stopped at the highway. She was also asked, "You told your lawyer, on direct examination, that you thought he was going to turn, didn't you?", and she replied, "Yes, but I thought he was .... I thought he surely would wait until I passed him." And again she was asked, "You had at least a half mile where you thought

Matt was going to turn into that driveway, didn't you?", and she replied, "Yes, but I thought he was going to stop, surely. When I realized that he was coming right into me I didn't have time to stop." She said that she was driving at about 50 miles an hour, and only took her foot off of the accelerator, but did not apply the brakes before or after the collision. She said that Ceasar never did stop after he made the turn, but reduced his speed to five or ten miles an hour.

Ollie Alsobrooks, Senior and Junior, were in a car seven or eight hundred feet behind the truck. The son admitted that he did not see the collision, but his father called the wreck to his attention. Still he was sure the truck did not stop before the collision, although it might have slowed down a little. The father said that he "practically" saw the accident, and that the driver of the truck did not look because he turned directly in front of the car. He did not see Matt give a signal, but would say that he did not do so, nor did he notice that the truck slowed down. But he said that his eyes were off of the highway just before the Negro cut across the traffic lane. He admitted that it was impossible for a person, in the driveway, to see a car in the dip to the south.

The jury had the benefit of photographs from various views and of the damaged truck. There was also introduced a drawing by one of the witnesses as to the position of the vehicle at the time of the collision. The record also discloses that Matt Ceasar utilized blotters in depicting the scene at the time of the collision. Of course there is no way for the court to visualize his various movements and positons of the blotters in that demonstration.

The appellants did not ask for a peremptory instruction at the close of the plaintiff's evidence, but they did so at the close of the whole case. They contend that the court erred in refusing to give this instruction.

If the jury believed the evidence for the plaintiff, they were warranted in finding that Ceasar exercised reasonable care in attempting to get off of the highway; that he slowed down for some distance, gave the proper signal for a left turn, looked both ways and saw no vehicle; that he stopped his car, put it in low, and started to make the turn, when he saw the Cadillac approaching at a high rate of speed; that he then put on his brakes and stopped; and that the car ran into his truck. In other words, that his movement on this occasion was with reasonable safety as enjoined by Section 8192, Code of 1942. Besides, under the admissions of Mrs. Hamilton herself, she was familiar with the driveway. For half of a mile she saw Ceasar slowing down and approaching the driveway. She thought he was going to turn into the driveway. Yet she did not slow down and get her car under control, but continued to operate her automobile at an admitted speed of 50 miles an hour, because as she thought, he would wait until she had passed him. The jury was fully warranted in believing that Ceasar was entitled to the right of way in turning off of the highway, under the circumstances, and that a contributing, if not the sole, cause of the collision was the negligence of Mrs. Hamilton in failing to slow down or stop her automobile.

Consequently the court very properly refused the requested peremptory instruction. Neither was the verdict contrary to the great weight of the evidence. White v. Chicago Southern Transportation Co. (Miss.), 84 So. 2d 161.

The appellants also contend that it was error to give the following instruction for the plaintiff:

"The court instructs the jury for the plaintiff that the driver of a vehicle must not merely drive such vehicle so as to be able to stop within the range of his or her vision, but the driver must so drive said vehicle that he or she can actually discover an object, perform the manual acts necessary to stop, and bring such vehicle to a com-

plete halt, if necessary, to avoid collision with others on or near the highways, and if you believe from a preponderance of the evidence in this case that defendant was not driving said vehicle so as to be able to avoid such a collision, then and in that event defendant was negligent, and if you further believe from a preponderance of the evidence that such negligence, if any, proximately contributed to the happening of the accident giving rise to the plaintiff's damages, it is your sworn duty to find for the plaintiff.''

It is said that this instruction fails to take into account the actions of others on the highway; that, under it, Mrs. Hamilton was required to bring her automobile to a halt and to avoid a collision; and that it made the appellants insurers of the safety of the appellee.

■■ ■ The instruction points out the general duty of a driver, in the control of his car, with reference to stopping, if necessary to avoid a collision with others, and what it takes to constitute that operation. It then submits the issue as to whether Mrs. Hamilton was driving her automobile so as to be able to avoid such a collision, which of course meant to slow the automobile or bring it to a halt, if necessary. Instructions must be based on the evidence. In view of Mrs. Hamilton's own admissions, as pointed out above, it is clear that, under the circumstances, she should have reduced her speed, or halted her car completely, if this was necessary to prevent a collision. Instead of doing this, she approached the driveway at an admitted speed of 50 miles an hour, having every reason to believe and know that the truck was in the act of turning or would turn into the driveway. She said that she took her foot off of the accelerator, reducing her speed to 40 miles an hour. This was evidently in the 15 or 20 feet before the impact. But she did not apply the brakes at all. This instruction was not erroneous under the evidence in this case.

In Rawlings v. Inglebritzen, 211 Miss. 760, 52 So. 2d 630, the crucial issue was whether Cumberland, the taxi driver, had the time and space to avoid the collision with Terry, the drunken driver, driving in a zigzagging manner. Because the great weight of the evidence indicated that Terry suddenly cut over in front of Cumberland not more than 50 feet before the cars collided, and also because of the giving of an erroneous instruction for the plaintiff, the cause was reversed. However, the opinion recognized and adopted as the governing rule in the case, the following statement from 60 C. J. S., Motor Vehicles, Section 317, as follows:

"Where motor vehicles pass each other while proceeding in opposite directions, the driver of each vehicle may rely somewhat, but not entirely, on the other's exercise of due care. The right of a motorist to assume that the driver of a vehicle proceeding in the opposite direction will obey the law of the road is not absolute and may be qualified by the particular circumstances existing at the time, such as the proximity, position, and movement of the other vehicle, and the condition of the road as to the usable width and the like. It has been held that a motorist may not be entitled to assume that drivers of approaching vehicles will keep their cars under constant control and will always obey traffic laws, and a motorist seeing a vehicle approaching in a position where, if such position is not changed, danger will ensue may not just sit silently and rely on the other party to do the thing required to avoid the accident.

"A motorist's right to assume that the driver of a vehicle proceeding in the opposite direction will obey the law of the road exists only until he knows or, in the exercise of ordinary care, should know otherwise. Accordingly, he may rely on the assumption that the driver of a vehicle approaching on the wrong side of the road will turn to his own right side in time to avoid danger, and that a vehicle approaching on its own right side of the

road will remain on that side, until, and only until, he sees or, in the exercise of due care, should see that the driver of the approaching vehicle will not do so, * * *." See also Harris v. McCuiston, 217 Miss. 601, 64 So. 2d 692.

In the above case there was a sudden turn without notice. In contrast the jury was warranted in believing that Mrs. Hamilton had ample notice that a left turn would be made by the truck in plenty of time and space to slow down or stop her car and thereby avoid a collision.

Due consideration has been given to all assignments. No reversible error appears in the record; and the cause must be affirmed.

Affirmed.

*McGehee, C. J.,* and *Holmes, Ethridge* and *Gillespie,* JJ., concur.