SOHIO PETROLEUM COMPANY, et al. *v.* FOWLER

No. 40446          April 22, 1957          94 So. 2d 350

*Laub, Adams, Forman & Truly,* Natchez, for appellants.

*R. L. Netterville, John T. Green,* Natchez, for appellee.

Holmes, J.

The appellee, Mrs. Alice B. Fowler, brought this suit in the Chancery Court of Adams County as an attach-

ment in chancery against Sohio Petroleum Company, a non-resident corporation, and against C. H. Ward, seeking the recovery of damages for personal injuries alleged to have resulted from a collision between an automobile driven by her and an automobile owned by the Sohio Petroleum Company and driven by its employee, C. H. Ward. The chancellor rendered a decree in favor of the appellee and against the appellants for $18,383, from which decree they prosecute this appeal.

The evidence discloses substantially the following: The collision occurred at about three o'clock P. M. on November 8, 1955, on what is known as the Liberty Road in Adams County, at a point about one-fourth of a mile east of the City of Natchez. The Liberty Road is a paved highway about twenty feet in width and runs in an easterly and westerly direction. The weather was clear and visibility was good. The appellee was returning to her home from Natchez driving her 1948 Studebaker sedan and proceeding on said highway in an easterly direction. She stopped her car on her right hand side of the road, headed east, nearly opposite the driveway entrance to her home which was located on the north side of the highway. Approaching her from behind and also traveling in an easterly direction was a 1930 model A Ford, driven by O. D. Howard. As the appellee brought her car to a stop in her right hand lane of traffic, she shifted into low gear and signaled to Howard to pass her. Howard drove around her at a rate of speed of about 15 miles per hour and then turned back into his right hand lane of travel. According to her testimony, when Howard turned back into his right hand lane of travel she looked in both directions and seeing, as she said, no car approaching from either direction, she turned to her left to cross the highway and enter her driveway, proceeding as fast as she could travel in low gear. She gave no warning signal of her intention to

turn her car to the left from its direct course upon the highway. The driveway from the highway to her home was a steep graveled incline, and when the front wheels of her car were about five feet in the driveway her car was struck on the right side near the center by a 1955 Ford owned by the appellant, Sohio Petroleum Company, and then being driven in a westerly direction by the appellant, C. H. Ward, in the north lane of travel of said highway, and then being operated by the said Ward as the employee of the said Sohio Petroleum Company acting in the course of his employment.

The highway from the point of impact slopes upward to a sharp curve at a point 410 feet east of the scene of the collision. The place where the collision occurred is visible to one rounding said curve. Ward testified that he drove around the curve at a rate of speed of from 40 to 50 miles per hour and that as he came around the curve he saw the appellee's car stopped opposite the driveway and in her right hand lane of travel and with her front wheels turned as though to cross the highway and enter her driveway. He said that he saw and recognized Howard as he passed him after Howard had turned back into his right hand lane of travel, and that he waved to Howard as he passed, and that at that time he had reduced his speed to about 35 or 40 miles per hour and had his foot on the brake. The point at which Ward passed Howard is variously estimated by the witnesses to be from 40 to 60 feet east of the place where the appellee's car was stopped in the highway. Ward further testified that his lane of travel ahead of him was clear and that since the appellee was standing still and appeared to see him and it appeared that she was going to stay where she was he took his foot off of the brake and put it on the accelerator and speeded up, and that then "it just looked like her car made a lunge right in front of me." He further testified that he locked his

brakes just before striking the Fowler car and that it happened so suddenly that he didn't have time to go around her. He testified that he knocked the appellee's car about five feet west of the driveway. Other witnesses testified that the Fowler car was knocked from five to twenty feet. The appellee testified that she had occupied her home on the north side of the highway since 1920 and that she was familiar with the highway and knew that it was dangerous at the point where it is intersected by her driveway.

The force of the impact caused the appellee to be thrown from her car and rendered momentarily unconscious. She was taken to her physician, Dr. Rice, and later taken to Dr. McAmis, who put her in the hospital where she remained from November 8 to about November 14 or 15. She testified that she was 72 years of age and that prior to the collision she was in good health and active and "loves to do a man's work"; that she worked on the roof, did carpentry work, dug ditches, and did all kinds of outdoor work; that she cannot now do the work she did because of the injuries which she sustained in the collision. She further testified that her neck, shoulders and back are sore as the result of the collision and that she has trouble lying in bed and "hurts all the time"; that it is necessary because of her injuries to have someone to wait on her and stay with her and perform the cooking and other household chores. Asked with reference to prior illnesses, she testified that she had had a prior trouble for which she was given radium treatment but that it developed not to amount to anything and she didn't have to stay in bed and never stopped driving her car.

Dr. McAmis testified that he treated the appellee after the accident and admitted her to the Natchez General Hospital; that he gave her a complete physical examination and made necessary x-rays; that he found no frac-

tures or dislocations; that she had a mild concussion and had brush burns over her forehead; that she had rather severe bruising of her head, her right arm and her right elbow and that motion of her back and neck was painful; that she had tenderness to pressure over her neck and back; that x-rays taken of her skull and neck and lumbar spine were negative as to fractures or dislocations; that she had a mild injury and spraining of the cervical spine. He further testified that he deduced from the mechanisms present that the striking of the car in which she was riding caused a jerking of her neck and that this produced a whiplash injury; that spraining of the supporting structures of the neck is usually associated with some tearing of the ligaments that support the cervical spine. The doctor further testified that the accident had activated an old osteoarthritis condition and that in his opinion appellee would not be able to do the work she had done prior to her injuries and that as a result of her injuries she would suffer pain for the rest of her life. There was proof that the reasonable expense of hiring someone to care for her and do her household and other work was from $18 to $25 per week. There was also proof that her hospital bill was $135 and that her doctors' bill was $145, and that the damage to her car was $290.

The chancellor found from the evidence that the appellee was guilty of no negligence causing or contributing to her injuries, and that the negligence of the appellant Ward was the sole proximate cause of the appellee's injuries. The chancellor further found that the appellee was entitled to recover of the appellants her hospital bill in the sum of $135, her doctors' bill in the sum of $145, loss of her car to the amount of $290, $20 per week over a period of eight years for the expenses of hiring someone to look after her and care for her and do her household and other work, and the sum of $9,493 for her pain

and suffering, all amounting to the total sum of $18,-383, for which total sum he rendered a decree in favor of the appellee.

■ ■ The appellants contend (1) that the evidence is insufficient to show that they were guilty of any negligence which proximately caused or contributed to the injuries of the appellee, and (2) that the injuries of the appellee resulted solely from her own negligence, and (3) that even if the appellants were guilty of negligence the appellee was guilty of contributory negligence.

We find no merit in the contention of the appellants that they were not guilty of negligence proximately contributing to the appellee' injuries. The appellant Ward admitted he was operating his automobile around a sharp curve in the highway and down hill at the rate of 40 to 50 miles per hour; that after he came around the curve he had a clear view from that point to where the appellee stopped her car near her driveway and saw the car stopped in the highway with the front wheels turned as though to cross the highway; that he proceeded to the point where he passed Howard; which was a distance of from 40 to 60 feet from the appellee's car, and that at that time he had his foot on his brake and had reduced his speed from 35 to 40 miles per hour; that he saw the appellee and the appellee appeared to see him, and that he thought she was going to stay where she was and that he then removed his foot from his brake and stepped on the accelerator and increased his speed without blowing his horn or giving any warning signal of his approach.

It was Ward's duty to keep his car constantly under control and to be constantly on the alert for others using the highway. Belk, et al v. Rosamond, 213 Miss. 673, 57 So. 2d 461; Graves, et al v. Johnson, 179 Miss. 465, 176 So. 256. Manifestly, he failed in the performance of this lu*v and the chancellor was amply warranted in finding

him guilty of negligence which proximately contributed to the appellee's injuries. (See and cf. Harris v. McCuiston, 217 Miss. 601, 64 So. 2d 692; Hamilton v. McCry, 91 So. 2d 564).

We think, however, that the overwhelming weight of the evidence shows that the appellee was also guilty of negligence and such negligence contributed to her injuries. She admits that when Howard had passed her and had gotten back into his lane of travel she turned to her left and started across the highway. She gave no warning signal of any kind to indicate her intention to turn from her direct course upon the highway. The undisputed proof shows that at the time she turned Ward was approaching and was a distance of from 40 to 60 feet from her. It is true that she says she looked in both directions and saw no vehicle approaching. The physical fact that the collision occurred before she could clear the highway demonstrates, however, that Ward was approaching in close proximity and that she should have seen him if she had been on the alert and keeping a proper lookout, and, therefore, she should be deemed to have seen him. The case of Robinson v. Colotta, 199 Miss. 800, 26 So. 2d 66, involved a collision between a truck and a taxicab. In that case the Court said: "The driver of the truck testified that he did not see the taxicab until he was right on it in spite of maintaining a lookout. The truck was on the wrong side of the intersection the best we can discern from the record. In our judgment, the driver of the truck should have seen the taxicab and his failure to see it can not be plead in defense. . . . There was nothing to prevent the drivers of these two motor cars from seeing the other vehicle and since the driver of the truck ought to have seen the taxicab, he should be deemed to have seen it. . . ."

The appellee was not only under a duty to keep a proper lookout and to be on the alert for other vehicles

using the highway, but she was under the duty imposed by Sections 8192(a) and 8193 of the Mississippi Code of 1942 not to turn her vehicle from a direct course upon the highway unless and until such movement could be made with reasonable safety, and then only after giving an appropriate signal by hand, arm or other signal device, in the event any other vehicle might be affected by such movement.

██ ██ While we are always reluctant to disturb the findings of a chancellor or a jury on issues of fact, we are constrained under the evidence and physical facts of this case to hold that the finding of the chancellor that the appellee was not guilty of contributory negligence is against the overwhelming weight of the evidence.

██ ██ On the record before us, therefore, we are of the opinion that in fixing the amount of the damages to be awarded to the appelle the chancellor should have taken into consideration the contributory negligence of the appellee.

We are accordingly of the opinion that in view of the evidence as to the nature and extent of the appellee's injuries and the overwhelming weight of the evidence showing the contributory negligence of the appellee, the amount of the damages awarded by the chancellor is grossly excessive.

If the appellee will within ten days from the rendition of this decision enter a remittitur in the amount of $5,000 so as to reduce the chancellor's award of damages to $13,383, the decree of the court below will be affirmed for such reduced amount, otherwise, the judgment of the court below is reversed and the cause remanded for a new trial.

Affirmed with remittitur, otherwise reversed and remanded.

*McGehee, C. J.,* and *Hall, Lee* and *Ethridge, JJ.,* concur.