COTHERN, et al. *v.* BREWER

No. 40956 December 15, 1958 107 So. 2d 361

*Richard A. Billups, Jr.,* Jackson; *Watkins & Watkins,* Tylertown, for appellants.

678

*Roach & Jones,* McComb, for appellee.

HOLMES, J.

The appellants brought this suit in the County Court of Pike County to recover damages for personal injuries and property damage. The action was predicated upon the alleged negligence of the appellee in so operating his 1949 Studebaker pick-up truck on the public highway as to cause a 1953 Ford automobile, jointly owned by the appellants and driven at the time by the appellant Leroy Cothern, to be overturned, resulting in the practical destruction of the Ford automobile and the serious, painful and permanent personal injury of the appellant Leroy Cothern.

The trial of the case in the county court resulted in a jury verdict and judgment for the defendant. On appeal to the circuit court, the judgment of the county court

was affirmed, and the appellants now appeal to this Court.

The appellants complain of certain instructions granted to the defendant below, and further contend that the verdict of the jury is contrary to the overwhelming weight of the evidence.

The evidence reveals substantially the following: The accident occurred on Highway 44, commonly known as Quinn's Bridge Road, on April 21, 1956, at approximately 10:30 o'clock A.M., at a point near the crest of a hill and approximately four miles east of McComb. The appellee, Robert Brewer, was driving his Studebaker pickup truck west on said highway. He was accompanied by his wife. The appellant, Leroy Cothern, was driving a 1953 Ford automobile, owned jointly by him and the other appellant, Cazzie Cothern. He was the sole occupant of the automobile and was proceeding in an easterly direction on said highway. The residence of Warren Brewer, a brother of the appellee, is located on the south side of the highway and a driveway leads from the highway to his residence. On the occasion in question, it was the purpose of the appellee, Robert Brewer, to turn to his left across the south side of the highway and enter the driveway of the Warren Brewer residence and proceed to the residence and there deliver some eggs to Mrs. Warren Brewer. According to the testimony of the appellee, as he approached the point where he expected to turn into the driveway, he slowed his truck almost to a stop and waited to let pass a red pick-up truck which was approaching from the opposite direction and which was being driven by Wilkie Dunaway in an easterly direction along the south lane of the highway, and which was preceding the automobile of the appellants. After the Dunaway truck passed, according to the testimony of the appellee, he signalled his intention to turn to the left into said driveway, and then crossed the south side of the highway and drove into the driveway of the

Warren Brewer residence. At the time he made his left turn, according to his testimony, the Cothern automobile was approaching from the west and was a distance from him of approximately a block or a block and a half. According to the appellee's further testimony, he drove into the driveway, a distance of 25 or 30 yards from the highway, and stopped his truck and turned off the ignition, and he and his wife were in the act of getting out of the truck when they heard a noise on the highway and looked back in time to see the Cothern automobile run into the bank of the highway. The testimony for the appellee further shows that appellee and his wife immediately went back to the highway and saw the Cothern automobile turned over on the south side of the highway in a ditch; that skid marks on the pavement showed that the Cothern automobile had skidded 63 feet to the left before it struck the bank on the north side of the highway, and then swerved back a distance of 99 feet before it turned over in a ditch; that Leroy Cothern was pinned under the car; that he was extricated from the car by parties appearing at the scene; that Mrs. Brewer asked him if he was hurt and he said ''not much''; that Mrs. Brewer said to him, ''boy, you must have been flying''; and he said he was ''going around 75''. According to the proof there was no actual contact between the Cothern automobile and the appellee's truck.

The proof for the appellants showed that the appellee gave no signal of his intention to turn left; that without warning he started across the south side of the highway as the Dunaway red truck approached, and that the Dunaway truck had to turn off the pavement in order to pass; that the Cothern automobile was about four or five car lengths behind the Dunaway truck and traveling at about 40 or 45 miles per hour; that as the Dunaway truck passed, the Cothern automobile was about three car lengths from Brewer's truck and that Brewer continued to cross into the south lane and that in order to avoid striking

him, Cothern had to cut his car to the left and in so doing lost control of his car and that this caused him to strike the bank and overturn.

■■ ■ It is readily apparent that the evidence in the case was conflicting and created an issue of fact for the jury. The jury found for the defendant below, and this finding is amply supported by the evidence. We are, therefore, of the opinion that the contention of the appellants that the verdict of the jury is contrary to the overwhelming weight of the evidence is not well founded.

The appellants contend, however, that the court erred in granting defendant's instructions numbered one, two, three and six.

Defendant's instruction number six is based on the evidence introduced on behalf of the appellee and presented to the jury the appellee's theory of the case, and this the appellee was entitled to. Accordingly, we find no error in this instruction.

Defendant's instructions numbers one, two and three, of which the appellants complain, are as follows:

"DEFENDANT'S INSTRUCTION NO. 1: The Court instructs the Jury for the defendant that at the time the defendant turned to the left across south half of the highway that the defendant was entitled to assume in determining whether said turn could be made with reasonable safety that the Plaintiff, Leroy Cothern, was operating his car at a lawful rate of speed of not more than 60 miles per hour, and if you believe from the evidence in this case that at the time the defendant made said turn that the said plaintiff was operating his automobile at a rate of speed in excess of 60 miles per hour and that said excessive rate of speed was the proximate cause of the accident, then it is your sworn duty to return a verdict in favor of the defendant."

"DEFENDANT'S INSTRUCTION NO. 2: The Court instructs the Jury for the defendant that it is the duty of the driver of every automobile while driving upon the

highways of this State to exercise reasonable care for their safety and for the safety of other persons and vehicles upon the highway, and if you believe from the evidence in this case that an exercise of reasonable care on the part of the plaintiff, Leroy Cothern, required that he decrease the speed of his automobile when he observed that the defendant was turning to the left across the south half of the highway, and if you further believe that said plaintiff on said occasion failed to reduce the speed of his automobile, then the Court instructs you that the plaintiff, Leroy Cothern was guilty of negligence, and if you further believe that said negligence, if any, on the part of the plaintiff, Leroy Cothern, was the proximate cause of the accident, then it is your sworn duty to return a verdict in favor of the defendant.''

''DEFENDANT'S INSTRUCTION NO. 3: The court instructs the Jury for the defendant that by virtue of the provisions of Section 8176 of the Mississippi Code of 1942 and amendments thereto, it was the duty of the Plaintiff, Leroy Cothern, to decrease the speed of his automobile as he approached the crest of the hill located at or near the place in the highway where the defendant turned to the left across the south half of the highway, and if you believe from the evidence in this case that the said Plaintiff failed to decrease the speed of his automobile, as it approached the crest of said hill, and if you further believe from the evidence in this case that such failure, if any, of the Plaintiff, to decrease the speed of his automobile was the proximate cause of the accident, then it is your sworn duty to return a verdict in favor of the defendant.''

 Defendant's instruction number one is erroneous in that while it informed the jury that the defendant, in determining whether or not he could negotiate his turn to the left with reasonable safety, had the right to assume that the plaintiff, Leroy Cothern, was operating his car at a lawful rate of speed of not more than 60 miles per

hour, the instruction failed to inform the jury that the defendant could indulge such assumption only until he knew or should have known in the exercise of ordinary care that the plaintiff, Leroy Cothern, was not going to slow down or reduce the speed of his automobile so as to permit the defendant to negotiate his turn with reasonable safety. Rawlings, et al v. Inglebritzen, 211 Miss. 760, 52 So. 2d 630; Harris, et al v. McCuiston, 217 Miss. 601, 64 So. 2d 692; Dame v. Estes, 101 So. 2d 644.

In the case of Rawlings, et al v. Inglebritzen, supra, the Court quoted with approval the statement of the governing rule as set forth in 60 C. J. S., Motor Vehicles, Sec. 317, as follows:

" 'Where motor vehicles pass each other while proceeding in opposite directions, the driver of each vehicle may rely somewhat, but not entirely, on the other's exercise of due care. The right of a motorist to assume that the driver of a vehicle proceeding in the opposite direction will obey the law of the road is not absolute and may be qualified by the particular circumstances existing at the time, such as the proximity, position, and movement of the other vehicle, and the condition of the road as to the usable width and the like. It has been held that a motorist may not be entitled to assume that drivers of approaching vehicles will keep their cars under constant control and will always obey traffic laws, and a motorist seeing a vehicle approaching in a position where, if such position is not changed, danger will ensue may not just sit silently and rely on the other party to do the thing required to avoid the accident.

" 'A motorist's right to assume that the driver of a vehicle proceeding in the opposite direction will obey the law of the road exists only until he knows or, in the exercise of ordinary care, should know otherwise. . .' "

■■ ■ Defendant's instructions numbered two and three are, in our opinion, erroneous in that they place emphasis upon the duty of the plaintiffs to observe due

care but fail to require of the appellee the exercise of due care in negotiating his turn to the left. Dame v. Estes, supra.

Defendant's instructions numbered one, two and three are further erroneous in that they instructed the jury that if negligence on the part of the plaintiffs was the proximate cause of the accident, the jury should return a verdict for the defendant. Of course, in order for a plaintiff's negligence to constitute a bar to his recovery, such negligence must be the sole proximate cause of the accident. Clyde Hill v. Columbus Ice Cream and Creamery Company, 93 So. 2d 634.

We have carefully examined all of the instructions for both sides and fail to find that any of the other instructions granted by the court are such as to cure the errors in the instructions hereinabove pointed out. It accordingly follows that because of the errors in the instructions hereinabove mentioned, the judgment of the court below must be and it is reversed and remanded.

Reversed and remanded.

*McGehee, C. J.,* and *Hall, Lee* and *Ethridge, JJ.,* concur.