GRAVES *et al. v.* JOHNSON *et al.*

(Division B.   Oct. 4, 1937.   Suggestion of Error Overruled Nov. 15, 1937.)

[176 So. 256.   No. 32818.]

466

Watkins & Eager, of Jackson, and **W. D. Womack**, of Belzoni, for appellants.

468

470

**Murphy & Wadlington** and **V. B. Montgomery**, all of Belzoni, for appellees.

Argued orally by **Pat Eager**, for appellant, and by **V. B. Montgomery** and **C. M. Murphy**, for appellees.

**Griffith, J.**, delivered the opinion of the court.

On August 22, 1936, appellants, under a contract with the state highway department, were engaged in the construction of a concrete highway from Belzoni to or beyond Silver City, and for a distance of approximately 6.770 miles. The work had been begun at Belzoni about three or four months previously, and proceeded thence southwardly towards Silver City. On the date aforesaid about one-half of the construction had been completed in so far as to admit local traffic thereon. It appears to have been the policy of the highway department to open the highway to local traffic as rapidly as the work progressed from the upper end of this link of road, and as far along each day as the concrete had had sufficient time after having been first laid to safely bear such traffic.

As to through traffic, it was provided in the contract that "during the construction of this project the road will be closed to through traffic, which will be detoured around the work over the old road from Midnight to Belzoni." When the work was first begun there was erected at a suitable and conspicuous place at the forks of this road with another, a large sign, 8 x 10 feet, which had painted thereon in large letters "Road Closed," with a detour sign thereon directing traffic to take the

other fork, and this sign was maintained there until after the date first above named. The detour mentioned in the contract, and as above quoted, was reached about 100 yards below Belzoni. This detour is spoken of in this record as the Pluck road.

When the work reached the Pluck road detour, and the concrete had sufficiently hardened to admit through traffic to that point, a conspicuous detour sign with a pointer was there placed, reading "Detour," and below the word "Detour," "Local Traffic Only." Since the road was to be open to local traffic beyond this point as the work progressed, the wooden barricade specified in the contract to be placed upon and across the road at detours could not be used at the Pluck detour, but it was moved from time to time down the highway as the progression of work would allow local traffic on the concrete road. There were no painted warning signs alongside the road south of the Pluck road detour.

This wooden barricade, placed and replaced as the work progressed, was often removed or broken down at night by unknown parties, and the green concrete beyond was damaged by vehicles using the unusable portion of the work. This experience was so frequent, and of such serious consequences, that the highway engineer in immediate charge for the state highway department directed that, instead of the wooden barrier, a long steel trailer be put lengthwise across the road at the end of the usable portion; and this was done by the contractor, the trailer barricade being moved farther southward as the work progressed.

This trailer barricade had, as part of its construction, steel I-beams about 8 inches in height from top to bottom of the beam, supported by large steel wheels, so that the I-beams were about 30 to 35 inches above the road, and they were more than 20 feet in length. They were painted with aluminum paint, which, as the witnesses say, made a sort of silver-white appearance. The trailer

weighed about 6,000 pounds. The concrete part of the highway was 20 feet wide.

When the crew quit work at 5 o'clock p. m. on the date first aforesaid, the trailer barricade was placed at right angles entirely across the road at the end of the usable portion and at the beginning of the unusable portion of the concrete highway, and flares were placed so as to light it at night. The roadway above the point was straight for a mile or more and was level throughout the entire of that distance. Some few minutes after six o'clock P. M. on that date, while the sun was still shining brightly and on a cloudless day, with no nearby trees or other objects to cast any shadows, appellees' decedent, driving an automobile at the rate of from 40 to 50 miles an hour, and without any slackening of speed at any time as he approached, crashed into this trailer barricade and was so seriously injured that death resulted in about 30 hours thereafter. His widow for herself and as next friend for his children brought suit and recovered a large judgment, from which this appeal is prosecuted.

In view of the aforementioned experiences with the wooden barricades, we would be disposed to hold that the contractor would have been justified in strengthening those barriers, so as to make them too heavy to be removed or struck down by trespassers at night; or that, so long as using the lighter wooden barricades, painted with black, white, and orange stripes prescribed by the highway department, the contractor could have attached such a barrier to the 3-ton trailer, with the trailer as a reinforcement, and that in such case the contractor would have a perfect defense against any person who collided therewith, regardless of the consequences of such a collision. In this connection we note the contention of appellees that the contractor was required to maintain a sign 400 yards up the highway from the barrier, this sign reading "Detour 400 yards."

The record is somewhat obscure as regards this contention, for the reason that there are no explanations

by any competent witness of the practical import of the very general language used in the contract on this point when applied to the changing situation here under review; but, so far as we can dependably see from what is now before us, and particularly when we look to the standard drawings, to which particular reference is made in the contract as regards the signs and barricades to be erected and maintained, the contract did not require the contractor, or certainly it is not clear that it did, to erect or maintain any such 400-yard sign south of the Pluck detour, for there was no other established detour. The testimony shows, without dispute, that the local traffic, in availing of the usable portion of the concrete below the Pluck detour, would turn off from that portion at any convenient place or places before reaching the unusable portion, and would thence use the borrow pits alongside the unusable portion of the main highway, it appearing that these borrow pits had been left in such condition as to be thus employed. And the other warning signs with the word "Slow" were required to be placed only when, and where, the state or project engineer in charge directed them to be placed; and there is no evidence in the record that any such warning signs were so directed.

All this can and ought to be cleared up on a new trial, but, as the record now stands before us, we think too much was made of this matter of warning signs in instruction No. 1 granted to appellees; for, in addition to the matter above stated, the rule is that, if all the existing physical facts were sufficient to give notice, the failure to give cumulative notice or notices does not aid plaintiffs' case. Raymond v. Sauk County, 167 Wis. 125, 166 N. W. 29, L. R. A. 1918F, 425; and see, also Hubbard v. Concord, 35 N. H. 52, 69 Am. Dec. 520, 533, and compare Thompson v. Miss. Cent. R. Co., 175 Miss. 547, 166 So. 353. Instruction No. 1 charged the jury that, as a matter of law, the appellants were required to erect and maintain reasonably proper and suitable danger

signs and warnings at reasonably sufficient and proper distances from the barricade, and concluded with language to the effect that, if appellants negligently failed to observe any or all of said duties as required of them by law, and that as a proximate result thereof, the deceased came to his death, the jury must find for the plaintiffs. The jury might have understood this instruction to require them to proceed to a verdict for appellees solely on the want of warning signs below the Pluck detour and this without regard to whether all the other existing physical facts were sufficient to give notice. Upon this latter point further attention will be given in subsequent paragraphs of this opinion.

But the painted barricade, which we think the contract definitely enough required to be placed at the end of the usable portion of the road, was not used by the contractor at that place on the day of the injury; and, as we understand the argument of appellants, they do not contend that the order of the state engineer to use the trailer alone as a barrier would relieve them of negligence in that regard, unless the construction of the trailer, its color, and the size of the surfaces presented to view, were such that the barricade was plainly visible to a driver who, in approaching it, was in the exercise of the care required of him under the law and under all the facts and circumstances of the case; and with that concession we proceed to the discussion of what, in our judgment, are the other issues in the case.

As to a completed highway, actually or impliedly accepted by the proper public authorities as such and which has been put into general and unrestricted use as a highway, complete in all the respects for which all the public has a right to use such a thoroughfare, a traveler thereon has the right to assume that the highway is in a reasonably safe condition for travel and is free from obstructions and he need not keep his eyes constantly fixed on the path of the highway or look far ahead for defects which should not exist, nor shall he be

absolutely required to exercise such an extreme vigilance as to see in any and all events such obstructions as bumpers in the road, or a chain stretched across it; nevertheless as to completed and accepted highways, the traveler must use ordinary care. 29 C. J., pp. 699, 700; 13 R. C. L., p. 472, sec. 386; and see McWhorter v. Draughan, 137 Miss. 515, 102 So. 567; Vicksburg v. Harralson, 136 Miss. 872, 101 So. 713, 39 A. L. R. 777. Even in the two cited cases, the first with respect to a chain stretched across the highway, and the other as to a bumper therein, the court held that contributory negligence was or would properly be submitted to the jury. Completed and accepted roads are not required to be in such condition as to insure the safety of reckless drivers. Mississippi Power Co. v. Sellers, 160 Miss. 512, 523, 133 So. 594; see, also, Walker v. Vicksburg, 71 Miss. 899, 15 So. 132, and the rule is further that the driver of a motor vehicle must keep his machine under control and be alert for pedestrians and other vehicles on the highway. Rhodes v. Fullilove, 161 Miss. 41, 50, 134 So. 840; 1 Blashfield Cyc. Automobile Law, p. 489 et seq.

But the highway here was under construction. It was not an accepted, completed highway, open to all the public for unrestricted use in all respects as is a completed and accepted thoroughfare; but its condition was such that any member of the public who used it, when he had knowledge or notice sufficient in the eyes of the law to amount to knowledge that the highway was under construction, was bound to anticipate that at some near point in his progress the usable portion would end and the portion actually under construction and unfit for use would begin, and that he could not go forward under the assumption that the way was open and clear throughout, but is put upon guard and under the obligation of vigilant caution to keep a constant lookout for the end of the used portion and the beginning of the portion unfit for use and not open for travel. No case has been cited in the briefs, nor found by us, unless Grosz v. Bone,

48 S. D. 65, 201 N. W. 871, be such a case, which lays down a specific rule as to the character of lookout required of a driver upon a road under construction; but we have no hesitancy in declaring the rule as above stated, so obviously in accord with common sense and reason, and which has been and is acted upon by men of common caution ever since the construction of modern improved highways has been begun. The rule as stated is similar in underlying principle, although not precisely parallel in application, to that in respect to repairs being made in an already finished highway, but which is known to be undergoing repairs, as to which see Waldmann v. Construction Co., 289 Mo. 622, 634, 233 S. W. 242; Elrich v. Schwaderer, 251 Mich. 33, 230 N. W. 902, and like cases.

Keeping in mind that this injury occurred in clear daylight, which makes cases dealing with injuries at night of little aid here, two principal crucial questions presented in this case are, therefore, whether the deceased knew or ought to have known, by the exercise of common care, that the road here in issue was under construction; and, if this be answered in the affirmative, whether, by the exercise of the cautious vigilance above mentioned as required in such a case, he could have seen the trailer at the end of the usable portion of the concrete highway in time to have stopped his automobile before he crashed into it, the rule being further that a driver will be presumed to have seen what he should have seen in the performance of the obligations required of him in the situation at issue. The present record contains enough to show that an impartial jury, under correct instructions, ought to find, and therefore probably would find, that the deceased knew or ought to have known that the road was under construction; and the record is by the great preponderance of the evidence that the deceased, if exercising the vigilance required of him in traveling upon a highway under construction, could have easily seen, and ought to have seen, the

trailer barricade across the road at the point where the green concrete began and the usable portion of the highway ended.

There remains a third principal issue, that, if the jury find, and this finding is supported by enough in the evidence as a whole to avoid the setting aside of the verdict as being contrary to the overwhelming weight of the evidence, that appellees' decedent did not know, and did not have common observation of sufficient facts to put him upon notice, that the highway was under construction, and was, therefore, entitled to the assumptions applicable to a completed highway, whether still in the exercise of the care required of travelers on a completed highway, he could easily and plainly have seen the trailer barricade in time to avoid the collision therewith. And, in speaking of sufficient facts to put the driver on notice, the facts are not to be confined to warning signs or written notices on such signs, as we have already hereinabove, in effect, said but includes as well all the easily visible physical indications upon or alongside the used part of the highway, including also those at the end, and even those shortly beyond the end, of the usable part of said highway.

Appellants, having in mind the rules as above stated, have strongly urged upon us that they were entitled to a directed verdict in their behalf, it being insisted that the trailer barricade was easily visible to any person exercising the required caution and vigilance under the circumstances. Under this record, including the photographs introduced by appellees, the issue is undoubtedly close upon the stated point; but the established rule in this state is that, when looking solely to the testimony in behalf of the party against whom the peremptory charge is requested, and taking that testimony as true, there is enough of facts testified to, along with the reasonable inferences which could be drawn therefrom in favor of said party, to support a verdict for him, the peremptory charge is not allowable. Mobile & O. R. R.

Co. v. Johnson, 165 Miss. 397, 141 So. 581. Without reviewing the evidence for appellees, which to do would considerably lengthen this opinion, we merely state that, upon a careful consideration of that evidence, we are of the opinion that the court was not in error in refusing the peremptory charge. Whether the verdict was against the overwhelming weight of the evidence on the stated point when all the evidence is considered we do not decide, for the reason that the judgment must be reversed and a new trial awarded under other points.

We are of the opinion that, under the present record and in view of the rules of law which we have above declared, instruction No. 2, granted in behalf of appellees, was so far misleading in its language as to be materially erroneous, particularly when considered together with instruction No. 1. This second instruction appears to have been a skillful redraft, with additional features, of the instruction found in Strickfaden v. Greencreek Highway Dist., 42 Idaho 738, 248 P. 456, 49 A. L. R. 1057, as appears on pp. 1070, 1071 of the last-mentioned report. But that case dealt with a completed road, theretofore opened for traffic throughout, and with an injury occurring in the nighttime, and wherein the only warning of the obstruction was a plank placed across the road on the ground. That case is so far different in its facts from the case now before us as to make instructions taken therefrom inapplicable here. The two instructions, Nos. 1 and 2, granted in the present case at the request of appellees and under the present record, overleap the precise rules of law which we have herein set forth as guiding principles to be applied to the case here under review, or, at least by the skillfulness with which they were drawn, were certainly capable of having misled the jury in overleaping the law as we have herein declared it to be.

We desire also to call attention to the fact that appellees' instruction No. 3 invites the jury to find a verdict for them, although the jury may believe that the

deceased was guilty of contributory negligence, and the next instruction, No. 4, procured by appellees, directs the jury that, if they find for plaintiffs, they shall assess full damages. For all we can tell, under such instructions, the jury may have believed plaintiffs' decedent to have been guilty of contributory negligence, indeed of gross contributory negligence, yet they are told in effect that they shall nevertheless find full damages; whereas the statute, section 511, Code 1930, plainly and positively requires, the requirement being an essential and inseparable part of the statute, that in such case the "damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured." If the damages be not diminished in such a case, there is thereby awarded more than the substantive law allows, and the statute has been violated, all at the invitation and procurement of instructions given at the request of plaintiffs themselves.

Appellees have replied that in several cases this court has held, and it has so held as a general proposition, that, if the defendant desire a diminution of damages for contributory negligence, he must obtain an instruction to that effect, else he cannot complain. But how can it be, as a specific proposition, that a plaintiff may himself specifically invite and thereby procure the violation of a plain statute, and then hold on to the fruits thereof? We think that if any one of the cases cited by appellees be directly in point, and capable of supporting the contention of appellees in the state of the instructions in the case now before us, such a case should be reconsidered as to whether it has gone too far; and, while expressing no opinion now beyond what has tentatively been stated, we call attention to the matter that the parties and the court may have it before them for consideration on a new trial.

Among other matters which the defendants gave notice that they intended to prove was that the plaintiffs' decedent was intoxicated, or partially so, at the time of

the injury, and defendants did introduce such evidence at the trial. In rebuttal plaintiffs introduced evidence that plaintiffs' decedent was not intoxicated, as they had a right to do; but plaintiffs went further and introduced testimony, over objections, that (a) the decedent was a careful driver; (b) that by habit he was a sober man; and (c) that his general reputation for sobriety was good. It is the general rule that, in an ordinary civil case, parties may not support their position by offering testimony as to their good character or reputation, and it is only when good character or reputation is the issue, such as in slander, false imprisonment, and like cases, that such evidence is admissible. 10 R. C. L., p. 947 et seq.; Leinkauf v. Brinker, 62 Miss. 255, 52 Am. Dec. 183; Harris v. Sims, 155 Miss. 207, 124 So. 325; Pounders v. Day, 151 Miss. 436, 439, 118 So. 298. Following the case last cited, we must say that the issue here was whether or not on this particular occasion the decedent was intoxicated to such an extent as to impair his competency as a driver of an automobile.

Appellees answer the last-mentioned assignment by saying in effect that the testimony, (a) to (c), was admissible as going to the amount of the damages to be allowed. If so, it should have been introduced in the evidence in chief, and not in rebuttal, with a clear statement made at the time of its introduction that it was offered solely on the issue of damages; and, in any event, evidence of good character as a driver or general reputation as to sobriety was not admissible in a case such as this. We do not say that we would reverse for this error alone, but we point it out as error so that it may be avoided on another trial.

Reversed and remanded.