## McClendon *v.* Boyd Construction Co.

No. 39658 May 16, 1955 80 So. 2d 32

March 28, 1955 78 So. 2d 796

*Morse & Morse,* Poplarville, for appellant.

368

*Williams & Williams,* Poplarville; *Vardaman S. Dunn,* Jackson, for appellee.

HALL, J.

This action was brought in the circuit court by appellant against appellee for the recovery of damages for personal injuries sustained by him when his automobile, driven by his agent, Jim McNair, but in which he was riding, left Highway No. 11 about two or two and a half miles south of Poplarville and crashed into a stump. The issue on the alleged negligence of Boyd Construction Company contributing to the wreck was submitted to a jury which found in favor of the defendant, and, from a judgment entered thereon, the plaintiff appeals.

The State Highway Commission entered into a contract with appellee for the construction of approximately four miles of new highway leaving the existing Highway 11 a short distance north of the Town of Poplarville and by-passing the town and coming back into the old highway about two and a half miles south of the town. At the latter point there was a curve in the highway which turned to the west. This new link was apparently designed not only to by-pass the town but also to eliminate several curves and shorten the route. Appellee began work on it on August 11, 1952. The accident occurred on September 14, 1952, at the south end of the project. Prior to commencing the work appellee erected certain signs required by the Highway department. The first sign was 500 feet south of where the new link was to intersect the old highway. It consisted of a white fence on each side of the roadway extending from the outer edge of the shoulder down into the ditch and attached to the east fence there was a large sign reading "THIS ROAD IS BEING CONSTRUCTED UNDER MISSISSIPPI NEW PAY-AS-YOU-GO ROAD PROGRAM." There was a flag and a reflector on this sign. Some distance north of that sign appellee erected another

large sign which read: "WARNING THE NEXT 4.2 MILES OF THIS ROAD IS UNDER CONSTRUCTION. DRIVE CAREFULLY. LOOK OUT FOR LOOSE DIRT, SOFT SHOULDERS, ETC."

North of this there was a standard highway marker, erected by the highway department, consisting of a metal sign on which there was a large arrow which bent so as to indicate a curve ahead. Some distance north of this there was another large sign erected by Boyd reading: "FEDERAL AID PROJECT NO. FI-002-1(1). BOYD CONST. CO. CONTRACTOR. SUPERVISION MISSISSIPPI STATE HIGHWAY DEPARTMENT." Immediately north of this there was a standard highway marker reading "MISS-U. S. 11." Some distance north of this the highway department erected and maintained in the curve but squarely in front of the straight road a post on which there were reflectors to warn travelers.

The accident in which appellant was injured occurred approximately between four and six o'clock a. m. on September 14. Appellant's automobile was traveling north and was being driven by Jim McNair, a colored man, who was appellant's employee. Another colored man was riding on the front seat with him. Appellant was riding on the rear seat. Appellant and Jim McNair had been over this very highway twice that night before the accident, with McNair driving. They had been over it many times before that and were thoroughly familiar with the highway and the warnings and surroundings. When the car reached the scene of the accident, McNair failed to turn with the curve in the highway but ran straight ahead, left the paved highway, ran straight into the sign which the highway department had erected in the curve, with the reflectors on it, knocked it down and continued straight ahead across the right of way of the old highway which was clear of all obstructions, and ran squarely into a large stump in the right of way

of the proposed new highway. The car came to a sudden stop against the stump. The motor was torn loose and driven back almost to the front seat of the car. The hood was torn loose and sailed seventy-five feet ahead.

It is contended that Boyd was negligent in not maintaining flares or smudge pots so as to light the signs which he had erected approaching the curve in question. The jury found against this contention and on this appeal appellant contends that the trial court erred in the granting of some of the instructions for appellee and in the admission of certain evidence over objection. Appellee replies that the instructions announce correct principles and that the evidence was properly admitted. Appellee further replies that it was entitled to a peremptory instruction which was refused by the trial court. We have reached the conclusion that the latter point is well taken and for this reason it is unnecessary to consider the other questions.

■■ ■ The old highway was constructed in 1924 with the curve and right of way in exactly the same condition as existed at the time of this accident. There had never since been any change made in it except hard-surfacing many years ago. There is no showing that in all the intervening years any automobile had ever failed to negotiate this curve safely. Boyd, up to the time of the accident, had never made any change in it and had never done any work at all on the old highway or on the right of way thereof. The new right of way for straightening the highway was acquired by the highway department from Emmett Askew who reserved the merchantable timber on it. Before Boyd ever entered upon his work Askew had had a logging contractor cut the trees and remove them. The stump which the car struck was left there by Askew's logger. All that Boyd had done before the accident in sight of the scene of this accident was enter upon the new right of way and cut and clear out such underbrush as was left thereon after the timber

had been removed. His crew had then moved on north and had been building concrete culverts and grading the new road about two miles from the scene of the accident and completely out of sight of the old highway. No part of the new highway had been opened to traffic, and, in fact, it would have been impossible for any motor vehicle to travel the proposed new road. The old highway not only had never been touched by Boyd, but no part of it had ever been closed to traffic. It was open and in use just as it had been since 1924. Under the circumstances here shown Boyd was not required to use any flares or smudge pots until some part of the old highway had been closed to traffic or until some work had been done on it.

■■■ The foregoing statement of the undisputed portions of the evidence demonstrates that Boyd violated no duty which it owed to appellant or the traveling public and was guilty of no negligence which proximately contributed to appellant's accident and injury. We are convinced, as was the jury, that the sole proximate cause of the wreck was the negligence of appellant's driver in failing to observe the signs which it is conclusively shown were in place at the time thereof. The signs erected by Boyd were all on large boards which any driver in the exercise of one iota of care for his own safety could and should have seen. We have left out of consideration the disputed evidence to the effect that appellant and his driver, with another party, had been on a drinking spree for many hours prior to the accident, and have based our decision solely on the undisputed facts. Graves v. Johnson, 179 Miss. 465, 176 So. 256; Central Paving & Construction Co. v. McCaskin, 183 Miss. 814, 184 So. 464; Myers v. Sanders, 189 Miss. 198, 194 So. 300; Dunn Construction Co. v. Nail, 192 Miss.

793, 7 So. 2d 884; C. C. Moore Construction Co. v. Hayes, (CCA 5) 119 F. 2d 742.

Affirmed.

*Roberds, P. J.,* and *Lee, Holmes* and *Ethridge, JJ.,* concur.

ON MOTION TO DOCKET AND DISMISS APPEAL

GILLESPIE, J.

Appellee moved to docket and dismiss the appeal. The judgment from which the appellant seeks an appeal became final on November 21, 1953. The appeal bond was filed May 18, 1954, which was six months, less two days, from the date the judgment became final.

Chapter 214, Laws of 1954, was approved on March 2, 1954, providing that appeals shall be taken within ninety days after the rendition of the judgment. All conflicting laws were repealed and the act provided that it should take effect sixty days after its passage, or on May 2, 1954.

The question presented is whether judgments that became final before March 2, 1954 are governed by Section 753, Mississippi Code of 1942, which allowed six months within which to perfect the appeal, or whether in such cases the appeal is governed by the 1954 act which would, in effect, require the appeal to be perfected within sixty days from March 2, 1954. To put it in different words, the question is whether the 1954 act should be applied retroactively or prospectively. We think the cases of Franklin v. Neill and Clark, 146 Miss. 157, 110 So. 368, and Harrington v. Yazoo and M. V. R. Co., 145 Miss. 887, 111 So. 144, are decisive of the question. In those cases, the Court had under consideration Chapter 153, Laws of 1926, which changed the time within which to appeal to this Court from one year to six months. In the Franklin case, the Court held that "the statute was intended to affect appeals only from judgments rendered after its passage and approval, and

that judgments rendered before the approval of the amended act are not controlled by it . . ." We hold that as to judgments rendered prior to the approval of Chapter 214, Laws of 1954, an appeal could be taken within six months from the date of rendition.

Appellee contends that the Franklin and Harrington cases are not in point for the reason that Chapter 153, Laws of 1926, did not repeal Section 2476, Hemingway's Code, and took effect from and after its passage, whereas, Chapter 214, Laws of 1954, provided as follows:

"Section 2. All laws or parts of laws in conflict with the provisions of this act are hereby repealed to the extent of such conflict only.

"Section 3. This act shall take effect and be in force from and after sixty (60) days after its passage."

Section 753, Code of 1942, was not specifically repealed. It was repealed only to the extent that it conflicts with the new act.

We do not think that the legislature intended by making the 1954 act effective sixty days after its passage that it was to have retroactive effect. The legislature is presumed to have known the construction placed on Chapter 153, Laws of 1926, by the Franklin and Harrington cases. If it had intended that the act be retroactive, we must assume that it would have said so. We construe the act as written. Section 753 was a statute of limitation. What we hold here is consistent with the general rule of construction of such statutes as stated in 34 Am. Jur., Limitation of Actions, Section 43, as follows:

"B. Prospective or Retrospective Operation

"43. Generally — Although, as already had been noted, it is within the power of the legislature to pass a statute of limitations, or to change the period of limitation previously fixed, and to make such statute or changes applicable to existing causes of action, provided a reasonable time is given by the new law for the com-

mencement of suit before the bar takes effect. Nevertheless, a statute changing the limitation period is not ordinarily construed as having a retroactive effect. On the contrary, in most jurisdictions statutes of limitation are construed as prospective and not retrospective in their operation, in the absence of a clear legislative intent to the contrary, and the presumption is against any intent on the part of the legislature to make such a statute retroactive. It has been said that words of a statute ought not to have a retrospective operation unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied . . ."

An example of a clear, strong, and imperative intention of the legislature of this State to make a statute shortening a statute of limitation retroactive is Chapter 251, Laws of 1934 (Section 720, Code of 1942).

The motion is overruled.

Motion to docket and dismiss appeal overruled.

*Roberds, P. J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.