ETHRIDGE, Chief Justice:
This is an appeal from a jury verdict and judgment of the Circuit Court of Jackson County, rendered in favor of plaintiff-appellee, B. F. Sullivan, administrator of the estate of Douglas McArthur Harvey, deceased, in the amount of $45,000 as damages for Harvey’s death. He was killed when at night he drove his car past warning signs into an asphalt spreader parked on the shoulder of a road under construction, and not open for general and unrestricted public use. The defendants-appellants are the prime contractor for the construction of the road, W. E. Blain & Son (called Blain) and Blain’s superintendent, James Kelley; and the subcontractor for the asphalt paving, Sam Finley, Inc., (called Finley), and its foreman Charles Ray. We reverse and render judgment here for appellants. There was no actionable negligence by them. Moreover, Blain could not be liable in any event, since the asphalt spreader was owned and exclusively under the control of Finley, an independent contractor.
Blain, as prime contractor, made a contract with the Mississippi State Highway Department to construct a five-mile, two-lane highway north of and parallel to existing U. S. Highway 90 in Jackson County. Blain began work on this road construction project at the east end and worked west, preparing the subgrade to receive the asphalt paving. He sublet the asphalt paving portion of the job to Finley. The construction work had been in progress for several months. Harvey had been employed by Blain for three months before the accident on July 27, 1965. He did general work, driving trucks, flagging traffic, and placing flares. Harvey resided about two city blocks from the site of the construction and the accident.
At each end of the project and at various intervals along it, barricades were erected according to highway department standards, on which there were lights or smudge pots. There were cross-over locations on which persons driving on the street to the north could cross over to the existing Highway 90. “Road Closed” signs and wooden barriers were set up at cross-over locations, with lights, but despite these signs vehicles at times would use the project, which had not been opened to the public, by ignoring the warning signs and driving around the sides of the wooden barricades. Harvey was fully acquainted with the project site, and the fact that the road was under construction.
The asphalt spreader involved in the accident was owned, controlled and under the exclusive supervision of Finley. It was painted a bright yellow, and was eight feet wide and seven feet high. It weighed over 14,000 pounds. It was parked by Finley’s foreman, Ray, on the Friday evening before the accident on the following Tuesday night, and was not moved from that spot. The asphalt spreader was located inside the barricades and lights, and on the north shoulder of the road under construction, with its right wheels off on the dirt portion of the shoulder. In this area the paving work had been substantially completed. All that remained to be done was to place the final layer of asphalt, eight feet in width, on the north shoulder. At the point of collision, the pavement was thirty-five feet in width, with a three-foot paved shoulder on the south or left-hand side, a twenty-four-foot main section, which was to become the traveled portion, and an eight-foot paved shoulder on the north or right-hand side, on which the spreader was parked. In addition, there was a section of dirt shoulder on the extreme north of the project, with a width of about three feet. The spreader, parked with its right wheels off the pavement and on the dirt portion of the north shoulder, was situated one to two feet away from and off the unmarked main section of the *438 roadway, which was to become the main traveled portion. Moreover, there was a thirty-foot width of pavement to the left of the parked machine which was clear and unobstructed. The road was level and there were no obstructions on either side of the spreader. It could be seen as far as the eye would reach. There were no lights or flares placed on or near the spreader, which was owned and controlled by the subcontractor. Finley did not place lights upon his parked equipment when it was not in the main portion of the road. The spreader was put in gear when parked, and a one-ton screed attached to' its rear was lowered and rested upon the pavement.
On that Tuesday morning, Harvey reported to work, but since it was raining, he was excused for the day. Leaving the project, Harvey and some friends stopped within five feet of the asphalt spreader when they thought they had a flat tire. That night Harvey borrowed a car from a fellow employee. Around eight or nine o’clock at night, he was seen drinking three beers at a cafe, and later two more beers at another place. Harvey drove around the “Road Closed” sign and light on the road under construction, and collided with the asphalt spreader. His vehicle made no skid marks. It had followed a weaving path up to the point of impact with the spreader. That machine was knocked twenty-two feet, eight inches from its parked position and completely off the north shoulder of the road under construction, although it weighed at least 14,000 pounds, was in gear, and a one-ton screed attached to it was resting on the pavement. There were no eye witnesses. It was obvious from the force of impact that Harvey was traveling at a high rate of speed at the time of the accident.
The undisputed evidence reflects that appellants breached no duty which they owed Harvey. Where the construction on a highway has not been completed or accepted by the public authorities, and the road under construction is not open to general and unrestricted traffic, the contractor is only required to keep and maintain the road under construction in a reasonably safe condition for use by those exercising vigilant caution and keeping a constant lookout for obstructions incident to the progress and completion of the work remaining to be done. A long line of cases have established this rule. Harvey v. Bush, 252 Miss. 326, 173 So.2d 125 (1965); Dunn Constr. Co. v. Nail, 192 Miss. 793, 7 So.2d 884 (1942); Myers v. Sanders, 189 Miss. 198, 194 So. 300 (1940); Central Paving & Constr. Co. v. McCaskin, 183 Miss. 814, 184 So. 464 (1938); Graves v. Hamilton, 184 Miss. 239, 184 So. 56 (1938); Graves v. Johnson, 179 Miss. 465, 176 So. 256 (1937).
Applying this rule to the instant facts, the highway was under construction and was not open to general and unrestricted traffic, except at cross-over intervals not here involved. Harvey knew this. He also knew that Finley was in the process of doing the paving work. He must have actually seen this particular machine in the same spot on the day of the accident. Although he needed no signs or barricades to tell him that the road was under construction, and that there might be obstructions on it, it is also undisputed that there were barricades at each end of this particular strip, reciting “Road Closed,” with a light thereon. The evidence is also clear that this road, under active construction, had not been open for the use of the general public, and was not in general or unrestricted use as a highway. That some people in the vicinity would occasionally drive around the barricades and down the unmarked highway does not override that fact.
Appellee contends that, although there were barricades at both entrances to this particular stretch of the road under construction, nevertheless Finley should have placed additional warning devices on or near the asphalt spreader itself. However, since there were barricades with *439 signs and lights at each entrance, no additional warnings were necessary on or near the particular machine. The existing signs were sufficient to warn a motorist that he should reasonably expect to encounter impediments to his safe travel if he failed to exercise vigilant caution and a constant lookout. Gordon v. Illinois Cent. R.R., 190 Miss 789, 1 So.2d 772 (1941).
Webb v. Brock, 232 Miss. 154, 98 So.2d 139 (1957), relied upon by appellee, involved work being done on a highway upon which the general public traveled without restriction. No effort was made by the contractor to curtail public traffic, and no warning signs or barricades had been set out. The Webb opinion carefully distinguished that situation from a road under construction and not open to free and unrestricted public travel. Appellee’s contention, that Blain had a custom or practice of putting lights on parked equipment, is not supported by the evidence. It only showed that it was Blain’s practice to flare equipment which completely blocked a highway under construction, but not when it was situated on the side and behind other barricades and lights as here. Moreover, the evidence fails to indicate that any assumed custom by Blain had any connection with Harvey’s actions on the night in question.
In short, the contractor had supplied the barricades and lights which fulfilled his duties, and was guilty of no negligence. This is also true of Finley, whose equipment was within the barricades and lights. Further, the evidence is conclusive that the asphalt spreader, within the warning signs, could be readily or easily seen by an approaching traveler who was exercising vigilant caution and keeping a constant lookout. On the other hand, it is manifest that the sole proximate cause of the accident and Harvey’s death was his failure to keep his car under such control as vigilant caution and constant lookout would have required. For these reasons, there was no evidence to support a finding of negligence by any of the appellants contributing to Harvey’s death.
Moreover, there is an additional reason why a judgment could not stand against Blain, the prime contractor. The asphalt spreader involved in the accident was owned and exclusively under the control of Finley as an independent contractor. Cook v. Wright, 177 Miss. 644, 171 So. 686 (1937).
Reversed and judgment rendered here for appellants.
JONES, PATTERSON, INZER and ROBERTSON, JJ., concur.