A hospital-surigcal policy which insured plaintiff (appellant) McLaurin, excepted "any loss resulting from . . . alcoholism." In the Lauderdale County Circuit Court he sued the insurers, Kennesaw Insurance Company and Old Southern Life Insurance Company (defendants, cross-appellants)[1] for hospital and medical expenses related to his treatment for injuries sustained in an automobile accident. The insurers argue that plaintiff's injuries resulted from "alcoholism" and that therefore the exception (for alcoholism) shielded them from liability. Dissatisfied with the amount of the $14,438.12 verdict and judgment, plaintiff perfected a direct appeal, and the insurers cross-appealed. We affirm.
On his direct appeal, the plaintiff argues that the lower court erroneously denied him prejudgment interest pursuant to Mississippi Code Annotated § 75-17-1 (Supp. 1975). He contends that the statutory interest (from the last date of his four periods of hospitalization) should be applied to the four sums or amounts attributable to each of his four hospital confinements. The record reveals that as to these four differing amounts related to four differing dates, plaintiff did not plead or demand interest, on his claim until after the jury verdict and judgment were entered. By his failure to make a timely demand for interest, plaintiff waived whatever rights he may have had (if any) under § 75-17-1 and there is no merit to his argument in that regard. State Farm Mut. Auto. Ins. Co. v. Bishop,329 So.2d 670 (Miss. 1976); Commercial Union Ins. Co. v. Byrne,248 So.2d 777 (Miss. 1971).
On cross-appeal the insurers argue that as a matter of law they are not liable under the policy. The evidence shows that plaintiff was injured in an automobile collision on the wrong side of the highway. His injuries caused him to be confined in the hospital for four different periods of time, totaling 151 days. Upon initial admission to Rush Foundation Hospital, the hospital records indicate he was "on an alcoholic basis at that time." Dr. Rush testified that he could not say whether plaintiff's delirium tremors were caused by a head injury or alcoholism. The doctor further stated that he was not treating plaintiff for alcoholism per se and he did not consider him an alcoholic. For his convulsions (delirium tremens) which occurred shortly after his admission, plaintiff was given intravenous alcoholic injections; he was also orally administered alcohol in the form of vodka and orange juice for twenty-five days, after which he made no request for alcohol. Records pertaining to examination of him at the hospital reveal that he received several bone fractures and other serious wounds.
Plaintiff admitted that just before the accident he had consumed one can of beer. The highway patrolman who investigated the accident smelled alcohol on plaintiff just after the accident. Outside the jury's presence, the patrolman stated that plaintiff's blood analysis was sufficient to substantiate a charge of driving while under the influence. The plaintiff denied that he was intoxicated when the accident occurred. Without objection when first asked, he denied that he was an alcoholic, but later objection was made and overruled. The insurers placed in evidence Dorland's Medical Dictionary (23d ed. 1957), which defines alcoholism as:
 ACUTE A., drunkenness or the temporary disturbance caused by the excessive use of alcohol.
 CHRONIC A., the state induced by repeated and long continued excess in the use of alcohol. *Page 363 
Insurers have cited no case, and this Court has found none, in which the exact language of the exception clause now before us has been judicially construed. Clauses of some similarity which have been construed are collected in 10 G. Couch, Cyclopedia of Insurance Law, § 41:448 at 390 (1963), and in Annotation, 13 A.L.R.2d 987 at 996 (1950). Those clauses invariably refer to the use, consumption or effect of intoxicants and none of them employ the term "alcoholism" or "alcoholic." The problem here is complicated by the medical and legal controversy surrounding the nature of alcoholism and whether it is a disease. Marshall v.United States, 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974); Powell v. Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968).
As to the particular insurance policy before us (if it were admitted that plaintiff was intoxicated when injured, which here is disputed), this Court declines to accept "alcoholism" as a synonym for "intoxication." Ample precise language already subjected to judicial construction was available to the insurers in drafting their exception clause. Their decision to use the vague term "alcoholism" without supplying any definition has rendered the clause ambiguous and precipitated them into the midst of a medico-legal controversy. The ambiguity and doubt created thereby is resolved in favor of the insured. HomerOwners Ins. Co. v. Keith's Breeder Farms, Inc., 227 So.2d 293
(Miss. 1969). The insurers' argument that the evidence conclusively proves, as a matter of law, that plaintiff's losses resulted from alcoholism is without merit on this record. Therefore, we cannot hold that the clause in the policy excepting losses resulting from undefined "alcoholism" entitled the insurers to a directed verdict.
On cross-appeal, the insurers further contend that the court below committed reversible error by permitting McLaurin to state his opinion that he was not suffering from the disease of alcoholism. As Chief Justice Burger pointed out in Marshall,supra, the current state of medical knowledge concerning alcoholism affords little basis for judicial response in absolute terms. Given the subjective nature of the compulsion (that seems to be the essence of the condition) and the absence of any definitive etiology, upon the peculiar facts of this case it was not error to permit plaintiff to give his own opinion as to whether or not he, personally, was suffering from alcoholism.
Without citing any authority, the cross-appellants state that it was error for the court to elicit from a witness that plaintiff was not an alcoholic. Similarly, the insurers attacked the trial court's allowing lay testimony that plaintiff was not suffering from alcoholism. They rely upon the general rule that in civil cases one may not bolster his case by the introduction of evidence of his good character except in cases such as slander, false imprisonment and the like. Graves v. Johnson,179 Miss. 465, 176 So. 256 (1937). Here, the testimony in question did not focus on the good character or good reputation of the plaintiff in a general sense, but on whether or not he was suffering from "alcoholism" and on whether he was a heavy or daily drinker. This testimony may be of limited probative value, but it was not reversible error upon this record for the jury to hear it and give to it such weight and effect as it saw fit.
The insurers also argue that the trial court erred in the granting of jury instructions numbered 10, 15 and 19 for the plaintiff. Instruction No. 10 tells the jury that:
 [I]f you believe from a preponderance of the evidence, if any, that the Plaintiff was not admitted to the hospital for treatment because of alcoholism and, further, that he was not treated for alcoholism, then it is your sworn duty to return a verdict in behalf of the Plaintiff. *Page 364 
The instruction is said to place too heavy a burden upon the insurers and gives undue emphasis to the language "that he was not treated for alcoholism." Further criticism of the instruction is that it could very well have meant to the jury that the plaintiff had a right to recover simply because he was not treated for alcoholism per se. Considered in isolation, the instruction may be considered as not properly keyed to the language of the exception clause in the policy excepting "any loss resulting from alcoholism." Other plaintiff's instructions, including those numbered 15 and 19, are to a lesser degree subject to similar criticism.
In our jurisprudence all jury instructions are considered in their entirety. Defense Instruction No. 6 told the jury that the plaintiff could not recover if he "at the time of the accident and losses complained of was suffering from alcoholism and that the losses complained of were a direct and proximate result of such condition." By numerous instructions, twelve for the plaintiff and sixteen for the insurers, the litigants were permitted to fairly present their theories of the case to the jury (eighteen instructions requested by plaintiff were refused, and twenty requested by the insurers were refused). Though certain instructions granted were inartfully drafted, the deficiencies were not so gross as to prejudice the insurers' case when all instructions are considered together.
All other points raised by the litigants on direct and cross-appeal were carefully considered but do not warrant discussion.
AFFIRMED ON DIRECT AND CROSS-APPEAL.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER and LEE, JJ., concur.
[1] The policy was issued by Kennesaw and assigned to Old Southern.