John R. THOMPSON, Plaintiff,

v.

RIVERSIDE CHEMICAL COMPANY and William McLeod, Defendants.

No. EC 75–103–S.

United States District Court,
N. D. Mississippi, E. D.

June 22, 1976.

Ben F. Hilbun, Jr., Starkville, Miss., William Liston, Winona, Miss., for plaintiff.

Tom Calhoun, III, Upshaw, Dale, Dorizas & Calhoun, Greenwood, Miss., for defendants.

MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action was tried to a jury at Aberdeen, Mississippi on February 3, 1976. The

case was submitted on a general verdict, and the jury found for the defendants. The clerk entered final judgment on the verdict in favor of the defendants on February 4, 1976.

Plaintiff's motion for judgment notwithstanding the verdict, or in the alternative, for a new trial, was timely filed and is now before the court for disposition.

After a full consideration of the question and the excellent briefs of the parties, the court has concluded that the motion for judgment notwithstanding the verdict is not well taken and should be overruled.

The only question which the court feels warrants discussion on the motion for a new trial, concerns an instruction given the jury at defendants' request relative to the duty of the decedent to keep a reasonable and proper lookout for traffic approaching him from the rear as he pedaled a bicycle alongside the paved portion of the highway on the shoulder of the road. The pertinent part of the court's charge on this issue is as follows:

Now, as I have said to you, there is an issue of contributory negligence in this case. In other words, the defendant says that the decedent himself was guilty of some negligence in the operation of his bicycle which either was the sole proximate cause of his injury and death or was at least a contributing cause to it. The Court instructs you in that regard that if you find from the credible evidence in this case that immediately prior to and at the time of the collision involved in this case that the decedent John Craig Thompson failed to maintain a reasonable and proper lookout for traffic approaching him from the rear, as he was required by law to do, or that he failed to keep his bicycle under reasonable and safe control, as he was required by law to do, then the plaintiff's decedent, John Craig Thompson, was guilty of negligence in the operation of his bicycle. And, if you further believe from the credible evidence in this case that John Craig Thompson's negligence was the sole proximate cause of this collision and the death of John Craig

Thompson, then it is your sworn duty to return a verdict for the defendants William McLeod and Riverside Chemical Company.

Now, in that regard, I instruct you that the burden of proof on that issue is upon the defendant to show by a preponderance of the evidence that the decedent was himself guilty of negligence as I have discussed it in this instruction, and that that negligence was the sole and only proximate cause of the injury. And, in that situation, then it would be your duty to return a verdict for the defendant.

(Reporter's transcript of the court's instruction, pages 16–17.)

The court's instructions also contained the following:

Now, the law of Mississippi provides that a bicycle is, in fact, a vehicle which is permitted to use the highways of this state just as a motor vehicle, and the statute provides, in pertinent part, that: "Every person riding a bicycle . . . upon a roadway shall be subject to the provisions of this chapter applicable to the driver of a vehicle, except those provisions of this chapter which by their nature can have no application." And, in this case, there are no provisions in the chapter to which reference was made which by their nature have any application to the incident which occurred in this case.

Every person riding a bicycle upon a highway in the State of Mississippi has been granted all of the rights and has been subjected to all of the duties applicable to the driver of a motor vehicle by the Uniform Highway Traffic Regulation Law—Rules of the Road of the State of Mississippi. This simply means that a person riding a bicycle is bound to obey the traffic regulations of the State of Mississippi the same as if he were operating an automobile, and that a bicyclist is entitled to the same consideration and rights from persons driving motorized vehicles as such persons owe to drivers of like vehicles. In other words, under the

law of the State of Mississippi, a bicycle is a lawful vehicle and the rights of one riding a bicycle on the highways of his state are the same as those of a person driving an automobile. You are, therefore, further instructed in this case that plaintiff's decedent, John C. Thompson, had as much right to operate his bicycle on U. S. Highway 82 as William McLeod had to operate his truck there, and that McLeod owed to John C. Thompson the same duties that he would owe to a driver of a motor vehicle.

(Reporter's transcript of the court's instructions, pages 11–12.)

The court's usual procedure is to require the jury in cases similar to the one sub judice, to return only a special verdict in the form of a special written finding upon each issue of fact, as permitted by Fed.R. Civ.P. 49(a). Such procedure enables the court to determine the answer of the jury to every controverted issue of fact, and furnishes the information which the court so desperately needs on the consideration of motions such as the ones sub judice. However, on the trial of this case, the court acceded to the request of counsel for both parties and deviated from its usual course.

The evidence introduced at the trial is without substantial dispute. The fatal accident occurred on a heavily travelled federal highway running through the heart of the City of Columbus, Mississippi. The highway runs east and west. On the occasion in question, the decedent was proceeding on his bicycle along the highway traveling from east to west.

The highway consists of two paved lanes of traffic; one in each direction. The shoulder on the north side is 8 to 7 feet in width and each traffic lane is 11 feet wide.

A short distance east of the place where the accident occurred, a bridge spans a large stream.

As decedent moved along the highway and across the bridge, a line of traffic developed in his traffic lane behind him. Defendants' vehicle, a large tractor-trailer combination, was the fourth vehicle in the line. There were three passenger type vehicles between the two. The traffic was moving at a moderate rate of speed.

The automobiles following decedent reduced the rate of speed at which they were traveling in order to permit decedent to cross the bridge. When the second automobile passed decedent he pedaled his bicycle onto the north shoulder of the highway and continued to proceed on the shoulder, approximately 4 feet north from the north edge of the pavement, without looking to his rear. Decedent was standing up on the bicycle pumping hard, and traveling approximately 15 miles per hour.

The third automobile, or the last one in line in front of defendants' vehicle, pulled to its left as far as the center line and passed decedent without incident. At this point in time, defendants' vehicle was two or three vehicle lengths behind the third automobile. The driver turned the vehicle to the left to the point that the left wheels were up against the north side of the centerline and began passing the decedent. When all of defendants' vehicle had passed decedent, except the rear portion, the driver heard, or felt, a "bump", and, on looking in his rearview mirror, saw that the right rear tandem wheels were running over decedent. As defendants' vehicle passed decedent, the bicycle overturned throwing decedent to his left onto the pavement in front of the right rear tandem wheels which ran over his head. The bicycle was only slightly damaged and decedent's only injury was to his head. Decedent did not, at any time, look back and at all times kept a lookout to the front in the direction in which he was traveling.

With these facts before the jury, the court submitted the instruction in question. The jury was instructed that it was the duty of decedent "to maintain a reasonable and proper lookout for traffic approaching him from the rear" and that a failure to maintain such a lookout was negligence. Plaintiff argues that the instruction is peremptory in nature, as it is undisputed that decedent did not maintain a lookout for traffic approaching him from the rear.

Plaintiff argues that the evidence established without conflict that decedent was aware of the traffic approaching from the rear and had moved onto the shoulder of the road to permit it's passing. Under such circumstances plaintiff contends that the law did not impose upon decedent the duty of keeping a lookout to the rear. The evidence shows that the tractor-trailer unit, more than 50 feet in length, had moved alongside decedent at or about the same rate of speed for a period of time sufficient to permit all but a few feet of the vehicle to pass. Thus, it is said that a failure to look to the rear could not possibly have had a causal connection with the accident.

■ It is a well settled rule in Mississippi that a motorist has a duty to keep a reasonable look out for persons and objects in the line to be traversed and that a failure to do so constitutes negligence. *Belk v. Rosamond,* 213 Miss. 633, 57 So.2d 461, 465 (1952); *McDonald v. Moore,* 159 Miss. 326, 131 So. 824, 826 (1931); *Graves v. Johnson,* 179 Miss. 465, 176 So. 256, 260 (1937); *Fowler Butane Gas Co. v. Varner,* 244 Miss. 130, 141 So.2d 226, 230 (1962).

■ The duty of a motorist under Mississippi law to keep a reasonable lookout for traffic approaching from the rear is not as clear as the duty to look ahead.

■ Unquestionable, in changing a course, reducing speed or making a turn, the lead motorist has a duty to give adequate warning to trailing traffic. *See, Box v. Swindle,* 306 F.2d 882, 885 (5th Cir. 1962).

Under some circumstances the questioned instruction would have been in all respects proper. The problem here, however, is whether the instruction is inappropriate under the peculiar facts of the case and, if so, whether the instructions could have been confusing to the jury.

■ It is undisputed that the decedent did not look to the rear and it is inconceivable that he did not know that the tractor-trailer rig was in the act of passing when he fell from the bicycle. Under such conditions can it be said that his failure to look behind him was a proximate cause of the accident. The court has concluded that decedent's failure to look back as he pedaled along the shoulder of the road was not a proximate cause of the accident, and that the instruction in question should not have been given.

■ If substantial rights of plaintiff have been adversely affected by the erroneous instruction, the court's duty is to grant a new trial. Fed.R.Civ.P. 61; *McCandless v. United States,* 298 U.S. 342, 347–48, 56 S.Ct. 764, 80 L.Ed. 1205 (1936); *United States v. McNally Pittsburg Manufacturing Corp.,* 342 F.2d 198, 202 (10th Cir. 1965).

■ The court is convinced that the instruction affected the substantial rights of plaintiff. In reaching this conclusion, the court is influenced by the language used by Justice Rodgers of the Mississippi Supreme Court in *Peel v. Gulf Transport Co.,* 252 Miss. 797, 174 So.2d 377 (1965). In *Peel,* the court considered a situation in which an overtaking bus collided with a pick up truck, resulting in the death of the driver of the truck. While reversing the case for the granting of a prejudicial "sudden emergency" instruction, Justice Rodgers commented on jury instructions given by the trial court regarding the duties of the deceased to look ahead and to both sides, as follows:

The theory of defendant is that Harold Peel turned his truck to the left and into the path of the bus just as it was in the process of passing. *Therefore the jury should not have been instructed regarding duties of deceased to look ahead and to both sides since such duty could not have been a proximate cause of the collision.* Obviously the bus was not beside the truck at the time it was alleged the truck turned to the left. *The instructions to look ahead, to look to the sides, to anticipate the presence of others, and failure to see what he should have seen is negligence, was confusing to the jury.* [Emphasis supplied]

174 So.2d 389.

Just as the instructions in *Peel* regarding the duties imposed upon the deceased to look ahead and to both sides was confusing

to jury, so was the instruction in the action sub judice regarding the duty of decedent to look behind him.

Since the court has only a general verdict with which to deal, the court cannot say with confidence that the erroneous instruction did not affect the substantial rights of plaintiff.

An order will be entered sustaining the motion for a new trial.