858 So.2d 199 (2003)
Tabatha SPOO, A Minor by and Through Her Mother and Next Friend, Detrece SPOO, Appellant,
v.
T.L. WALLACE CONSTRUCTION COMPANY, Appellee.
No. 2002-CA-01373-COA.
Court of Appeals of Mississippi.
October 28, 2003.
*201 J. Niles McNeel, Louisville, attorney for appellant.
Jennifer Lynn Walley, attorney for appellee.
Before McMILLIN, C.J., BRIDGES and THOMAS, JJ.
THOMAS, J., for the Court.
¶ 1. Tabatha Spoo, by and through her mother, Detrece Spoo, as next friend, appeals the decision of the Attala County Circuit Court to grant summary judgment to the defendant, T.L. Wallace Construction Company, and dismissing the complaint with prejudice. Tabatha assigns two errors for our review:
I. THE TRIAL COURT ERRED IN FINDING NO GENUINE ISSUE OF MATERIAL FACT ALTHOUGH THE DEFENDANT FAILED TO COMPLY WITH THE TRAFFIC CONTROL PLAN.
II. THE TRIAL COURT ERRED IN FINDING NO GENUINE ISSUE OF MATERIAL FACT ON WHETHER DEFENDANT WAS NEGLIGENT IN NOT INSTALLING ADDITIONAL BARRICADES AND WARNINGS AFTER NOTICE OF PUBLIC USE OF THE BYPASS.
¶ 2. Because we find the defendant did not breach its duty of care, we affirm the grant of summary judgment.

FACTS
¶ 3. In October 1999, T.L. Wallace Construction Company (Wallace) was building a two-lane road between Highways 35 and 14, thereby creating a bypass around the southern perimeter of Kosciusko, Mississippi. Three bridges were constructed between these two points, Bridges A, B and C, with Bridge C closest to Highway 35, the eastern terminus of the project. Although the bridges were intact, the road itself was unfinished and unpaved. The road bed was approximately thirteen inches lower than the bridge, essentially creating a one foot cement wall at the bridge approach. This was to be corrected in the final paving of the road.
¶ 4. In order to cross a bridge to attend other work before the paving of the road, Wallace had erected make-shift dirt ramps at either end of a bridge in use. These ramps were later removed when no longer needed.
¶ 5. At the Highway 35 end of the project, three possible points of ingress or egress existed: a one-lane entrance ramp in the south-bound lane; a one-lane exit ramp to the north-bound lane; and a two-lane entrance and exit in the center. The one-lane entrance and exit ramps were blocked by orange and white barricades *202 measuring twelve feet wide and four feet high, each of which had attached a sign reading ROAD CLOSED. The two-lane entrance/exit had two such barricades side by side, at least one of which also carried a ROAD CLOSED sign. In addition to the barricades, the entrance ramp was blocked by five orange and white barrels while the exit ramp was blocked by two barrels.
¶ 6. Shortly after midnight on October 30, 1999, Dale Spoo was driving north on Highway 35. In the backseat of his Chevrolet Blazer were Dale's three children, three year old twins and a two year old son. Dale's fourteen year-old niece, Tabatha Spoo, rode in the front passenger seat. Two other vehicles traveled in a caravan with the Blazer. Dale's sister, Denise, and her boyfriend drove in one of the other vehicles and Michael Kellum, a friend of Dale's, in the other.
¶ 7. The occupants of these other two vehicles saw Dale drive around the barricades at the two-lane entrance and proceed onto the unopened bypass road. Denise and Kellum both continued on Highway 35. Dale crashed into the thirteen inch unfinished approach to Bridge C. Wallace had removed the dirt ramp more than a week earlier. Dale was killed at the scene. Tabatha suffered bilateral broken ankles and a broken back, resulting in partial paralysis. At least one of the small children in the back seat was injured but the extent of those injuries are unstated in the record.
¶ 8. Expert opinion estimated Dale's speed at the time of impact as between fifty and fifty-five miles per hour, based upon an evaluation of the extensive damage to the Blazer. The Blazer also had only one functioning headlight prior to the accident. Autopsy results show Dale had a blood alcohol level of 0.12% at the time of impact, as well as the presence of marijuana metabolites of sufficient levels to establish Dale had ingested marijuana within the several hours before his death.
¶ 9. Tabatha later filed suit against Wallace, claiming negligence for failing to erect barriers that would keep the public from entering the bypass, and for creating a hazard by removing the dirt ramps with the knowledge that the public utilized the unfinished road including the bridges. After discovery, Wallace moved for summary judgment which was granted on the basis that Dale Spoo was the sole proximate cause of Tabatha's injuries.

ANALYSIS
¶ 10. Because each of the assignments of error may be resolved upon the same bases, we combine them for discussion. For appeals from summary judgment, we employ a de novo standard of review. Lewallen v. Slawson, 822 So.2d 236, 237(¶ 6) (Miss.2002).
¶ 11. In order to succeed on a claim of negligence, as Tabatha here complained, the plaintiff must establish four elements:
(1) A duty, or obligation, recognized by law, requiring the person to conform to a certain standard of conduct for the protection of others against unreasonable risks.
(2) A breach of the duty, a failure on the person's part to conform to the standard required.
(3) A reasonably close causal connection between the conduct and the resulting injury.
(4) Actual loss or damage resulting to the interests of another.
Carpenter v. Nobile, 620 So.2d 961, 964 (Miss.1993).
¶ 12. The duty owed by the contractor of a roadway under construction and not yet open to unrestricted public use *203 is to give legally sufficient notice to a traveler that the road is, in fact, under construction and, attendant with that status, the traveler should anticipate impediments to his passage. Graves v. Johnson, 179 Miss. 465, 479, 176 So. 256, 260 (1937). Once that notice has been conveyed, the driver is obligated to maintain vigilant caution and keep a constant lookout for perils. Id. Although most authority on this standard of care is of older vintage, the vigilant care requirement for drivers of roads under construction was very recently discussed by this Court and it is still the applicable standard. Mississippi Dept. of Transp. v. Trosclair, 851 So.2d 408, 417-18 (¶¶ 31-32) (Miss.Ct.App.2003).
¶ 13. From this standard are drawn two crucial questions: (1) whether Wallace gave notice sufficient that Dale Spoo knew, or should have known, that the bypass road was still under construction and (2) if so, did Dale Spoo then exercise the necessary degree of care in response to this knowledge. Graves, 179 Miss. at 480, 176 So. at 260. Although we need not address the second question unless the first is answered in the affirmative, the answer to both of these questions is unequivocal: Yes, to the first. No, to the second.
¶ 14. Without doubt, Dale Spoo knew the road was still under construction. All entrances from Highway 35 were barricaded and signs announced the road was closed. Tabatha does not even attempt to argue otherwise as she admitted during discovery the bypass was still under construction on October 30, 1999. Even without this admission, no reasonable jury could find that twelve foot barricades, barrels and signs in the middle of each entrance were insufficient to give notice that the road was under construction.
¶ 15. Dale had previously avoided the barricades and traveled the unopened road. In her motion opposing summary judgment, Tabatha argues this is evidence of proximate causehad Wallace not been negligent in placing barriers and barrels, Dale would not have been able to drive around them. The fact that Dale had previously driven the unopened road by going around the barricades merely emphasizes his knowledge that the road was closed and under construction. We know of no authority requiring a contractor to completely block the entrance to an unfinished road with an immovable barrier nor does Tabatha point us to any. We do, however, have authority which states that one who drives around or through any barricade of an officially closed highway or road is guilty of a criminal misdemeanor. Miss. Code Ann. § 63-3-321 (Rev.1996).
¶ 16. It is also equally apparent that Dale did not exhibit the necessary degree of care while traveling the bypass road. Tabatha either admits or does not dispute the following facts: Dale had a blood alcohol level of 0.12%. This exceeds the legal limit of 0.08% to drive a car. Miss.Code Ann. § 63-11-30(1) (Rev.1996). The autopsy report also showed recent consumption of marijuana. Expert opinion held that the result of the drug and alcohol ingestion was a significant impairment of Dale's judgment, perception and motor skills. Dale was driving between fifty and fifty-five miles per hour on an unpaved, unfinished road. The vehicle had only one functioning headlight and the accident occurred just after midnight.
¶ 17. The driver of a motor vehicle is required to keep the vehicle under control and drive at a speed reasonable for the conditions faced. Upchurch ex. rel. Upchurch v. Rotenberry, 761 So.2d 199, 205 (¶ 24) (Miss.2000). Dale did nothing to accommodate either the conditions of the road or his own impaired status. Had the *204 signs been absent from the road entrances, Dale would have still failed to keep the proper lookout. The conditions of the roadunpaved, unlighted, littered with construction debris and equipmentindicated that great care needed to be paid under the circumstances. The only reasonable conclusion to be drawn from the undisputed facts is that Dale did not exercise vigilant caution and a constant lookout for danger. By driving impaired and failing to account for the conditions of the road, he failed to exhibit even ordinary caution. We particularly note that in no pleading or otherwise has Tabatha attempted to argue or otherwise persuade that Dale's actions on the night of October 30, 1999, met the requisite standard of care he assumed by knowingly driving on a road under construction. Her only argument is that Wallace should have done more.
¶ 18. Tabatha argues that despite the barricades and signs, Wallace may yet have proximately caused her injuries because Wallace failed to comply with the Mississippi Department of Transportation traffic control plan. The plan called for the placement of eleven barrels at the Highway 35 site but Wallace only had seven, a fact Wallace does not dispute.
¶ 19. Having only seven barrels instead of eleven does constitute non-compliance with the traffic plan. It is not, however, proximate cause, nor does it create a reasonable question on the issue unless Tabatha can make a sufficient showing that the absence of these four barrels somehow led Dale Spoo to reasonably believe the road was finished, open to the public and free of construction obstacles such that he need only exercise ordinary care. This Tabatha cannot do nor, again, has she attempted to do so.
¶ 20. We have already agreed with the trial court that the notices given were legally sufficient for Wallace to discharge its duty of care. Tabatha's own witnesses, Denise Spoo and Michael Kellum, testified by deposition that the barricades were up and in place and Dale had to drive around them in order to access the bypass road. Denise did state she thought the barricade on one of the ramps had been moved to one side. Dale, however, did not access the bypass via one of the ramps, but rather by driving around the barricades at the two-lane main entrance.
¶ 21. Tabatha further argues that Wallace was negligent by removing the dirt ramps to Bridge C because it had knowledge the public was using the road, and the bridge, thereby creating a dangerous condition for which additional barricades or signs should have been placed at the entrance to the affected bridge.
¶ 22. Wallace does not dispute there was evidence people were using the road. A Wallace supervisor stated at deposition that on nights and weekends the barricades were sometimes moved and workers would see tire tracks at the site. There was testimony that Dale Spoo made unauthorized use of the road on previous occasions.
¶ 23. This does not change or increase Wallace's duty. The contractor's duty is to warn that the road is under construction. Having fulfilled this initial duty by barricading and placing signs at each possible entrance, Wallace was not required to place additional signs or barriers around a particular hazard within the barricades. Blain v. Sullivan, 204 So.2d 436, 438-39 (Miss.1967). That people in the community would at times make use of the unfinished bypass does not change this. Id. at 438. One who chooses to ignore the warnings and enter such a road does so at one's own peril. Central Paving *205 & Constr. Co. v. McCaskin, 183 Miss. 814, 824, 184 So. 464, 466 (1938).
¶ 24. We are aware that Tabatha's expert reconstructionist opined that the accident would not have occurred had Wallace made certain the public could not enter the bypass, that the knowledge of the public's use of the bypass required Wallace to take additional steps. That is not the law. It is axiomatic that all accidents could be avoided if only someone somewhere would do something differently. The question of law we address here is not whether something else could have been done differently but rather whether there was a breach of the duty owed by Wallace by failing to do that which was required. There was not.
¶ 25. We are also aware that Tabatha's injuries were not the result of her own negligence. As a passenger in the vehicle, she was at the mercy of her uncle's imprudent actions. Although she was not the driver, any negligence Dale may have shown would not be attributable to Tabatha and she could have recovered if Wallace was in any degree the proximate cause of her injuries. Id. at 825, 184 So. 464. This rule does not aid a passenger when the sole proximate cause of loss was the driver. Id.
¶ 26. Summary judgment is proper when, after adequate discovery and upon motion by a party, the non-movant fails to make a showing sufficient to establish the existence of an essential element to that party's case and upon which that party would bear the burden of proof at trial. Galloway v. Travelers Ins. Co., 515 So.2d 678, 684 (Miss.1987). In such cases, there can be no genuine issue of material fact for jury determination as a complete failure concerning an essential element necessarily renders all other facts immaterial. Id. at 683 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).
¶ 27. Tabatha admits that barriers and signs were in place and that all who approached had notice of the road's status as closed for construction. This admission means Tabatha cannot prove an essential element of a negligence claim and one for which she would bear the burden of proof at trialthat Wallace breached its duty of care. The only way by which Tabatha could conceivably recover against Wallace would be to show that Dale Spoo drove with the requisite degree of care demanded by the circumstances. Tabatha has made no showing at all of this. Under these facts, summary judgment was properly granted.
¶ 28. THE JUDGMENT OF THE ATTALA COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.