BOWLING, Justice,
dissenting:
I respectfully dissent.
As usual, much of the testimony on important points in the case was highly conflicting. The undisputed evidence showed that appellant had begun the construction work in May, 1974. Its contract with the Highway Department required that the highway be kept open for the traveling public during the construction work. Certain warning signs were required and were placed at the beginning of the area under construction and along the roadway at various intervals. It suffices to say that the traveling public was warned that the highway was under repairs. In addition to this, the plaintiff traveled the highway frequently and admittedly had full knowledge that the construction work was in progress.
The accident occurred at the beginning of a long “sweeping” curve going toward the left for a vehicle traveling east, as was that of the plaintiff. All witnesses agreed that the car left the south side of the roadway just as it reached the curve. Plaintiff testified that the last thing he remembered pri- or to the accident was lights on a vehicle approaching from the opposite direction. He remembered nothing further until several weeks later in the hospital.
On the question of the condition of the roadway and the lack of warning signs or appliances in the area, plaintiff introduced five witnesses; all saw the scene shortly after the accident. The testimony of these witnesses was that there was a vertical “drop-off” from the hard surface of the roadway to the shoulder. The estimates of the extent of this varied between one foot and one and one-half feet. All testified that there were no warning signs or devices of any kind in the area that would warn a person driving at night of the alleged dangerous “drop-off.”
One of the witnesses was Daniel Lowery, a supervisor at a plant in Taylorsville. He was not acquainted with the plaintiff. He worked the night shift on November 7, and was on his way home from work, going in a westerly direction on Highway 28. He was the first person to the scene after the accident. His testimony was that he saw flashes that appeared to be lightning as he approached the scene, but found them to be electrical flashes from the electrical wires that were attached to the pole that was struck by the plaintiff’s car. He first started looking for the car and found it with the plaintiff thrown outside the car. Plaintiff was unconscious. This witness examined the scene after plaintiff was carried away in an ambulance, and testified that he could *1377 see where plaintiffs vehicle had left the south side of the roadway and had left “some skid marks” as the wheels got on the shoulder, which, according to him, was two to three feet wide at that point. He testified that the drop from the hard surface to the shoulder was probably twelve to fourteen inches at the point where the vehicle left the roadway. The witness did not see any warning signs where the collision occurred.
One of plaintiff’s witnesses was Paul Craft, a forester for Georgia-Pacific Company, who lived about one and one-half miles from the scene of the accident. He testified that at the time the accident occurred there was a foot drop-off in the area where plaintiff’s car left the highway; and there was two to three feet of dirt for a bank and then a six-foot drop-off again. He testified there were no warning signs in the area where the accident occurred.
Appellant introduced five witnesses who contradicted plaintiff’s five witnesses. The gist of appellant’s witnesses was that there was no extensive “drop-off” in the area where the accident occurred, but that the shoulder had been pulled back almost even with the top of the hard surface. There were some admissions that the distance between the top of the hard surface and the top of the shoulder varied to a minor extent along the highway.
The jury found for the plaintiff under proper instructions and this Court, therefore, is bound by the jury’s finding on the principal issues set out in the declaration, towit: (1) There was a dangerous “drop-off” where the plaintiff’s car left the roadway, and (2) there were no warning signs or devices in the area to warn of the condition.
The cases are too numerous to cite that this Court is bound by the finding of the jury on a disputed question of fact unless the Court can say with reasonable certainty that the finding is against the overwhelming weight of the evidence. From the foregoing discussion, it is obvious to this writer that we cannot so find in this case, and we are bound by the jury’s determination.
Appellant advanced the assignment of error that as a matter of law plaintiff, after having been warned and knowing that the road was under construction, was not entitled to recover. The majority opinion agrees with this contention. Several cases are cited and shall be discussed. The paramount situation in analyzing the jury’s finding with the decided cases is that in this case the highway under construction or repair was fully opened to members of the traveling public. A different situation entirely would exist had plaintiff been traveling on a highway marked closed during the course of the repairs.
Among others, appellant relies on the case of Reeves v. W. E. Blain & Son, Contractors, 276 So.2d 461 (Miss.1973). There the jury found all disputed facts in favor of the defendant construction company. As in the case at bar, the plaintiff’s decedent was fully warned that the highway was under construction. The car of the decedent was struck by another car at an intersection and the principal ground of alleged negligence was the failure of the construction company to have a stop sign on the road that crossed the highway. The testimony was clear that the driver of the other car stopped even though there was no sign. The opinion of the Court in essence stated that the jury was properly instructed as to plaintiff’s theory of the case, and even though, unlike the case at bar, there was practically no dispute in the evidence, the jury found all issues for the defendant construction company.
Appellant relies on W. E. Blain et al. v. Sullivan, 204 So.2d 436 (Miss.1967). In that case the Court, through Chief Justice Eth-ridge, emphasized the fact that the incident resulting in the case occurred on a “closed road” and the undisputed testimony showed that the construction company breached no duty owed the motorist. The Court reiterated its former decisions to the effect that:
Where the construction on a highway has not been completed or accepted by the public authorities, and the road under construction is not open to general and unrestricted traffic, the contractor is only required to keep and maintain the road *1378 under construction in a reasonably safe condition for use by those exercising vigilant caution and keeping a constant lookout for obstructions incident to the progress of the work remaining to be done. A long line of cases has established this rule.
It should be noted here in the case at bar the jury was instructed fully on the duty owed by appellant and the circumstances under which appellee was entitled to recover. Appellant asked for and was granted an instruction that it was the duty of the plaintiff to exercise vigilant caution and to keep a constant lookout. This instruction seems to have gone further than is required or authorized where the road under construction is open to unrestricted traffic. Admittedly plaintiff was guilty of negligence that contributed to his injuries. This, however, under cases too numerous to cite, only mitigates his damages. As said in 4 Blashfield, Automobile Law and Practice, section 166.4, at page 453:
As a general rule, the question of contributory negligence on the part of a motorist in an action for injuries from alleged defects in a public highway should be submitted to the jury or to the trial judge if he is sitting as a trier of facts. It is only where the facts are undisputed or clearly established by the evidence that such question is decided by the Court as a matter of law.
Appellant requested and received ample and plain instructions on the question of contributory negligence and negligence being the sole cause of plaintiffs injuries.
In the case of Webb et al. v. Brock, 232 Miss. 154, 98 So.2d 139 (1957), the Court, in a case similar to the case now under consideration, said:
It is true that the highway was under construction and Bonner knew it, that is to say, he knew it was being prepared for paving. But the existence of those two facts does not necessarily and of themselves absolve appellants from negligence. The correlative duties of a contractor on the road under construction and the traveler on the road are determined by all the circumstances.
The Court further said:
Bonner’s duty to anticipate such hazards would have been of a different degree but for the fact that the road was open to general and unrestricted travel.
I am, therefore, of the opinion that the jury had sufficient evidence to find that plaintiff during the night-time was confronted with a dangerous situation caused by appellant and that his injuries resulted from that situation, and the further finding that there was not sufficient warning at night in that particular area.
The majority opinion overlooks a very important fact brought out in the evidence. Even though the plaintiff’s vehicle traveled approximately 600 feet after leaving the roadway, it was still approximately 25 feet from the edge of the highway when it came to rest. Therefore, we know that there was not much of a “sweeping” curve, and after the vehicle went off the narrow shoulder it travelled mostly down the edge of the highway.
Another important point is that from the evidence in the case, including plaintiff’s testimony, the jury could and obviously did find that the acceleration of the car was caused or contributed to by the force of the initial impact either by mechanism of the car or plaintiff’s foot or leg striking the accelerator. This is substantiated by the fact that plaintiff remembers nothing that occurred at that particular instant.
The implication of the majority opinion is that once the contractor of a highway construction project similar to that before us places signs worked out by some highway department employee, the contractor may then brush his hands and ignore the rights of the traveling public who are paying him to do the work. The contractor has a license to ignore any further common-law duty to protect those forced to travel the roadway from serious personal injuries or death. The citizen who pays for the project assumes the risk. This writer is not prepared to agree that this is proper, either under common-law rules of negligence or other *1379 principles announced by authorities in such cases. I think that the people who are forced to travel on highly used roads such as the one in this case deserve more consideration.
In my humble opinion, the plaintiff, although obviously guilty of some negligence, did not assume the risk of hazards caused by the contractor. He was entitled to require that the contractor follow his common-law duty to use reasonable care to protect the plaintiff and others regardless of placing the required warning signs that the highly traveled road was undergoing repairs. The jury had sufficient evidence to find that the contractor had created an unusually dangerous situation at a particular area; that this danger was intensified because of nighttime travel, and that there was not sufficient warning of this particular hazard. Therefore, I would affirm the verdict of the jury and the resulting judgment of the lower court.
PATTERSON, C. J., and WALKER and LEE, JJ., join in this dissent.